734 So.2d 237 (1999)
Angela BRAWLEY, Appellant,
v.
Nathan BRAWLEY, Appellee.
Nos. 97-CA-00728-COA, 97-CA-01031-COA.
Court of Appeals of Mississippi.
January 26, 1999.
*238 Collier Carlton, Holly Springs, Attorney for Appellant.
David L. Robinson, Ashland, Attorney for Appellee.
BEFORE BRIDGES, C.J., PAYNE, AND SOUTHWICK, JJ.
PAYNE, J., for the Court:

PROCEDURAL POSTURE AND ISSUES PRESENTED
¶ 1. This case is before the Court on appeal of an order modifying child custody entered by the Chancery Court of Benton County, the Honorable Anthony Thomas Farese, presiding. Feeling aggrieved, Angela timely perfected this appeal, challenging the chancellor's modification of custody. After reviewing the record, the briefs of the parties, and the applicable precedents, we affirm the chancellor's decision.

FACTS
¶ 2. Angela and Nathan Brawley were married on February 17, 1981, following a three week courtship. This union produced two children: Kenneth Brawley, born in 1983 and Cody Brawley, born in 1993. After separating in April, 1995, the couple filed a joint petition for divorce on the grounds of irreconcilable differences, along with a property settlement agreement and child custody arrangement. A divorce was granted to Angela and Nathan by order of the Benton County Chancery Court on September 22, 1995. Incorporated as part of the judgment of divorce was the property settlement agreement and the child custody arrangement.
¶ 3. The child custody agreement provided Angela with full custody of both minor children, with Nathan enjoying reasonable visitation rights. Nathan agreed to pay child support in the amount of $265 per month, as well provide insurance for the children and pay all of the children's medical *239 bills not covered by the insurance. On February 11, 1997, Nathan filed a petition for modification of child custody, seeking a change of custody from Angela to Nathan, as well as other related relief. On February 26, 1997, Angela filed her answer and counter-complaint, denying Nathan's claim that custody should be modified and seeking an increase in child support as well as a contempt citation against Nathan for his failure to maintain insurance on the children. Following a trial on the merits, the chancellor modified the original child custody arrangement to award Nathan full custody of Cody. The child support obligations of Nathan were suspended. Further, Nathan and Angela were charged with the respective health care costs of the child in their custody, including insurance.[1]
¶ 4. Nathan and Hattie, Nathan's present spouse, testified in support of the custody modification. Nathan testified at length about his concerns regarding the children's well-being. First, Nathan testified that Angela and the children resided in a small two bedroom house. At one point, according to Nathan, seven people resided there, including Angela's boyfriend. Second, Nathan maintained that an infection which developed in Cody's genital area was due to poor hygiene. Third, Nathan pointed to the fact that Cody was not taken for his vaccinations on schedule as evidence of Angela's poor care for the children. In addition, Nathan testified that he provided Angela with funds for Kenneth to visit a dentist; however, Angela informed him that she planned to spend the money otherwise. Fourth, Cody exhibited behavior which Nathan believed indicated that he was being exposed to explicit sexual conduct in the home. Nathan's basis for this very serious allegation was grounded primarily in an incident where Nathan's wife, Hattie, discovered Cody in bed with his underwear pulled down masturbating. According to Nathan, when Cody was asked about his activity, he said that his older brother Kenneth taught him. Cody and Kenneth shared a bed in Angela's home. Further, Cody would grab himself between the legs and refer to his penis as his gun. When confronted about this behavior, Nathan testified that Angela told him to come and get the children if he did not want them to live with her. Nathan also testified that Cody would use obscene gestures in the form of sticking his middle finger up at people. Cody also spit on people, and Nathan asserted that Angela vowed to teach both of the boys to spit in both his and Hattie's faces. After Nathan met and married Hattie, the visitation schedule with the boys deteriorated, due to the fact, Nathan believes, that Angela was jealous of his marriage to Hattie and the fact that Hattie cared deeply for Cody and Kenneth. When the children visit, Nathan testified that Angela calls them and agitates them. Nathan related one incident over the Christmas holiday of 1996 when Angela and her boyfriend came to get the children. As they left, Angela stripped Cody of clothes Nathan had bought for him and threw them in the yard.[2] Nathan related a disturbing conversation he had with Cody where Cody expressed a desire to come and live with him and a desire that Nathan kill Angela so that he could come and live with Nathan. Hattie also related that Cody told her that Angela put him in hot water.
¶ 5. Nathan's relationship with Kenneth is almost nonexistent, with Angela and Nathan blaming each other for this decline. Kenneth, the oldest child, had a history of problems, ranging from difficulties succeeding in school because of excessive absences to personal emotional problems which caused him to threaten harm to Hattie. In addition, Kenneth had received *240 treatment for suicidal tendencies. Nathan believes that Angela cared for the children but was not providing a proper environment for their rearing as evidenced by both boys' behavior.
¶ 6. Angela testified that Nathan failed to abide by the divorce agreement to provide medical insurance on the children. As a result, the children had to be placed on Medicare. Angela denied that the house was occupied by up to seven people at one time: her brother and his two children were there for two weeks while he was in the process of getting his house; her ex-boyfriend, George, did not live with her but would stay there for brief periods when he was off the road from his job as a truck driver; and her friend Pattie and her two children lived with Angela and the children for about three and one-half weeks while they were waiting to move into their mobile home.
¶ 7. With regard to the medical care of Cody and Kenneth, Angela testified that Cody's genital infection occurred before the divorce and was not due to poor hygiene. She testified that Cody's vaccinations were behind at one point because when she would take him to get them, he would have symptoms of a cold and could not take the shots. Angela denied that she had ever sexually abused either of her children and that Cody's removing his clothes was not indicative of anything other than his being a three year old. Cody's behavior about grabbing his crotch and referring to his penis as his gun was picked up from his brother. Angela testified that Nathan taught Cody how to flip somebody off, and that she likely did, in a moment of anger, make the comment about teaching Cody to spit in Nathan's and Hattie's faces. When Angela became aware of Cody's spitting on people, she scolded him. Angela maintains she had never done anything to undermine her children's relationship with Nathan; however, she did admit that she had not encouraged a good relationship with Hattie. Angela denied that she calls the children when they are with Nathan to agitate them but worries about them and calls to make sure they are o.k. Angela expressed concern about Nathan's care for Kenneth in that he and Kenneth had a physical altercation during one visit where, according to Angela, Kenneth was bruised.[3] Angela also testified that Nathan had a serious drinking problem. Angela believed this court action by Nathan was prompted by her visit to Nathan's home in December 1996, and the fact that Kenneth does not want to visit Nathan. Also, Angela testified that Cody had recurring head lice, but not from neglect. Angela maintained that the lice was treated but recurred on several occasions.
¶ 8. Aside from Nathan and Angela, other witnesses offered evidence with regard to the custody matters. First, Kenneth, the oldest child, testified that he believed that his school problems were caused by Nathan's behavior and his taking Angela to court. Kenneth testified that Hattie did not care about him and Cody, and he expressed a strong desire to remain in Angela's custody. Kenneth maintained that his emotional problems were over because Nathan was not bothering him anymore. Second, Charlene Yeager, Angela's mother, testified about Nathan's drinking problem and to the fact that she had witnessed Nathan physically abuse Kenneth when Nathan consumed alcohol. Charlene also maintained that Nathan, not Kenneth, taught Cody to grab his crotch and call it his gun and use obscene hand gestures. Third, Becky Allen, Angela's neighbor, testified that she thought Angela provided adequately for the children and possessed the better parenting skills. Becky also corroborated the testimony about Nathan's drinking problem, and believed that Cody may have picked up grabbing his crotch *241 from Nathan because she had seen Nathan do similar acts in the past. Finally, Becky testified that she had witnessed Nathan encourage Cody how to use obscene gestures. Nathan denied teaching Cody to use obscene gestures, testifying that Cody had told him that George, Angela's boyfriend, taught him to use such gestures.

STANDARD OF REVIEW
¶ 9. The standard of review employed by this Court in domestic relations cases is abundantly clear. Chancellors are vested with broad discretion, and this Court will not disturb the chancellor's findings unless the court's actions were manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard. Andrews v. Williams, 723 So.2d 1175 (¶ 7) (Miss.App.1998)(citing Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997); Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994); Crow v. Crow, 622 So.2d 1226, 1228 (Miss.1993); Gregg v. Montgomery, 587 So.2d 928, 931 (Miss.1991)).

ANALYSIS AND DISCUSSION OF LAW
¶ 10. Angela maintains that the chancellor was manifestly wrong in altering the custody arrangement to grant Nathan primary custody of Cody. The chancellor provided very thorough and detailed findings of fact and conclusions of law. After reviewing the chancellor's findings of fact and conclusions of law, we cannot say that he manifestly erred in his decision. The chancellor's decision was based on substantial and credible evidence, and we decline to disturb his findings on appeal.
¶ 11. Child custody proceedings are some of the most difficult decisions that chancellors and this Court must face and resolve. As the chancellor noted in his very detailed order in the case sub judice, it is tragic when the children in a divorce situation become pawns in webs spun by the feuding parents.
¶ 12. In proceedings to modify child custody arrangements, the non-custodial parent must satisfy a three part test in order to gain a modification: a substantial change in circumstances of the custodial parent since the original custody decree, the substantial change's adverse impact on the welfare of the child, and the necessity of the custody modification for the best interest of the child. Bredemeier v. Jackson, 689 So.2d 770, 775 (Miss.1997)(citing Bubac v. Boston, 600 So.2d 951, 955 (Miss. 1992)). It is abundantly clear that the polestar consideration in child custody decisions is the best interest and welfare of the child. Whittington v. Whittington, (¶ 11), 724 So.2d 922 (Miss.App.1998)(citing Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983)). Further, where there are siblings in a domestic dissolution, it is the general rule that, absent "unusual and compelling circumstances," the best interests of the siblings will be served by keeping them together; however, this is not a per se rule, and the best interest of the children must be the paramount concern. Bowen v. Bowen, 688 So.2d 1374, 1380 (Miss.1997)(see also Sellers v. Sellers, 638 So.2d 481, 484 (Miss.1994); Franklin v. Kroush, 622 So.2d 1256, 1256 (Miss.1993); Arnold v. Conwill, 562 So.2d 97, 100 (Miss. 1990); Sparkman v. Sparkman, 441 So.2d 1361, 1362-63 (Miss.1983)). Further, "[t]he credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation, are primarily for the chancellor as the trier of facts." Andrews, 723 So.2d 1175 (¶ 17)(citing Polk v. Polk, 559 So.2d 1048, 1049 (Miss.1990)).
¶ 13. In this case, the chancellor methodically outlined the basis for his decision under Albright and other relevant authority. The chancellor heard testimony to the effect that Cody's welfare and development were being compromised by allowing him to remain with Angela. Indeed, Cody's behavior, who at the time of the filing of this action was approaching four *242 years old, was troubling. Further, the chancellor had before him substantial and credible evidence to the effect that Kenneth's behavior had deteriorated since the parent's divorce. It was also apparent from the Kenneth's testimony that he had no desire to live with Nathan. While the testimony about the boys' behavior was disputed, it was for the chancellor to assess the credibility of the witnesses and weigh their testimony. Further, the chancellor's visitation schedule allows Kenneth and Cody weekly visits which will provide the siblings with frequent contact.
¶ 14. After reviewing the testimony and the chancellor's excellent articulation of the reasons for his decision to split the custody of Cody and Kenneth between Nathan and Angela, we cannot say that the chancellor manifestly erred in his decision. Accordingly, we affirm.
¶ 15. THE JUDGMENT OF THE CHANCERY COURT OF BENTON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED AGAINST THE APPELLANT.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, KING, LEE, AND SOUTHWICK, JJ., CONCUR.
IRVING, J., NOT PARTICIPATING.
NOTES
[1] In a subsequent order dated August 18, 1997, the chancellor continued the suspension of child support obligations by both parties.
[2] Angela testified that she threw the clothes in the yard because Hattie demanded that the clothes Cody was wearing be left there.
[3] Nathan admits to taking Kenneth into the bedroom, but denies striking him. Nathan admitted pushing Kenneth onto the bed.