792 So.2d 1020 (2001)
Camille Corrine Cabrera STURGIS, Appellant
v.
John Earl STURGIS, Appellee.
No. 1999-CA-00321-COA.
Court of Appeals of Mississippi.
August 28, 2001.
*1022 Sharon Patterson Thibodeaux, Jackson, Attorney for Appellant.
R. Conner McAllister, Attorney for Appellee.
Before KING, P.J., LEE, and CHANDLER, JJ.
KING, P.J., for the Court:
¶ 1. Camille Sturgis has appealed the denial by the Rankin County Chancery Court of her request for modification of child support, and its grant of her former husband's, John Sturgis, motion for a change of custody.
¶ 2. Finding error, we reverse and remand.

FACTS
¶ 3. The Sturgises were married in 1991. While Mrs. Sturgis had two daughters from two prior marriages, she and John Sturgis had one child, John Ryan Sturgis, born July 5, 1992.
¶ 4. The parties were granted an irreconcilable differences divorce in 1994. As a part of this process, the Sturgises executed a written property distribution and custody agreement.
¶ 5. Pursuant to that agreement (1) the parties would have joint custody of the minor child, with Mrs. Sturgis having primary physical custody, (2) Mrs. Sturgis waived the payment of child support, (3) Mr. Sturgis was to pay the cost of day care, provide health insurance for the child, pay all medical, dental and drug expenses not covered by insurance, and provide clothing for the child at a cost not to exceed $75 per month.
¶ 6. In July 1997, Mrs. Sturgis sought to have Mr. Sturgis held in contempt for failure to pay her $75 per month for the child's clothing. Mr. Sturgis responded to this motion by requesting a change in child custody. When her motion for contempt was denied, Mrs. Sturgis requested an increase in child support.
¶ 7. By judgment dated December 30, 1998, the chancellor denied Mrs. Sturgis' requested increase in child support, but changed the physical custody of the child to Mr. Sturgis.

DISCUSSION
¶ 8. Mrs. Sturgis has presented several issues for this Court's consideration. However, we address only the change of custody and failure to grant a modification of child support.

I

MODIFICATION OF CHILD SUPPORT
¶ 9. Child support is subject to modification upon the demonstration of a material change in circumstances. Yancey v. Yancey, 752 So.2d 1006 (¶ 9) (Miss.1999). Those changes may be of the mother, the father or the child. However, such changes must be relevant to either the needs of the child and/or the ability to provide support. Turner v. Turner, 744 So.2d 332 (¶ 17) (Miss.Ct.App.1999).
¶ 10. In the present case, Mrs. Sturgis offered no proof that the minor *1023 child had needs which were not being met under the present support arrangement.
¶ 11. This Court finds no error in the denial of modification of child support.

II

MODIFICATION OF CUSTODY
¶ 12. The matter of child custody is a matter within the sound discretion of the chancellor. Delozier v. Delozier, 724 So.2d 984 (¶ 4) (Miss.Ct.App.1998). Where the chancellor has applied the correct legal standard, and makes finding of facts, which are supported by substantial evidence, this Court will not reverse his decision. Touchstone v. Touchstone, 682 So.2d 374, 377 (Miss.1996). However, if the chancellor has applied an inappropriate legal standard, he has abused his discretion as a matter of law, and this Court will not hesitate to reverse him. Cavett v. Cavett, 744 So.2d 372 (¶ 13) (Miss.Ct.App. 1999).
¶ 13. A change in child custody should not be granted upon mere whim or caprice, but only when there has been a material change in circumstances, which suggests that a change of custody is in the best interest of the child. Weigand v. Houghton, 730 So.2d 581 (¶ 15) (Miss. 1999). Before undertaking a possible change of custody, the court must first identify the specific material changes in circumstances, which make such a consideration appropriate.
¶ 14. In holding that such a material change of circumstances had occurred in this case, the chancellor stated:
That the Court, using the Caldwell v. Caldwell Factors finds as to change of custody the following:
a. John Ryan Sturgis is six (6) years of age at this time and is in need of a firm stabilizing influence in his life.
b. John Ryan's step-sister who resides with him and his mother presents a serious state of affairs for the minor which are contrary to the best interest of the minor child in the following manner:
1. The step-sister drinks alcohol beverages.
2. The step-sister is in juvenile court for her conduct.
c. The mother, Camille Corrine Cabrera Sturgis, uses abusive and profane language in the presence of the minor child.
d. The mother, Camille Corrine Cabrera Sturgis, engages in sexually explicit conduct by drinking with her daughter's friends and making statements to a young boy as follows: "If I have a few more drinks you might get lucky."
e. The mother, Camille Corrine Cabrera Sturgis, allows minors to have a party at her residence where there was alcohol present.
f. the mother, Camille Corrine Cabrera Sturgis, provides little, if any, moral training for the minor child.
That the Defendant has shown that a material change in circumstances has occurred and that it would be in the best interests of the minor child for his care, custody and control to be placed with the father, John Earl Sturgis, immediately.
¶ 15. The chancellor began his consideration of child custody by referencing what he considered to be the appropriate factors, as found in Caldwell v. Caldwell, by which to determine whether a material change in circumstance had occurred. While not given a specific citation in the reporter, this Court assumed the reference to be to Caldwell v. Caldwell, 579 So.2d 543 (Miss.1991). Those Caldwell factors, *1024 found on page 547, referred to modification of child support rather than custody, and are as follows:
A child support award can be altered if it can be shown that there has been "a substantial or material change in the circumstances of one or more of the interested parties: the father, the mother, and the child or children, arising subsequent to the entry of the decree to be modified." Tedford v. Dempsey, 437 So.2d 410, 417 (Miss.1983). Some of the factors which may be considered in determining whether a material change has taken place include:
(1) increased needs caused by advanced age and maturity of the children (2) increase in expenses, and (3) inflation factor. Other factors include (4) the relative financial condition and earning capacity of the parties, (5) the health and special needs of the child, both physical and psychological, (6) the health and special medical needs of the parents, both physical and psychological, (7) the necessary living expenses of the father, (8) the estimated amount of income taxes the respective parties must pay on their incomes, (9) the free use of a residence, furnishings, and automobile and (10) such other facts and circumstances that bear on the support subject shown by the evidence. this Court has recognized, however, that a standard of living cannot be imposed upon a father beyond his financial ability to provide. Nor can a court relieve a mother of her obligation to support because she is not now required to work because if a new husband's financial means.
¶ 16. If these were in fact the factors applied by the chancellor in determining whether a material change in circumstance had occurred to an extent that modification of custody was warranted, it would be inappropriate, and therefore an abuse of discretion as a matter of law. Touchstone v. Touchstone, 682 So.2d 374, 377 (Miss. 1996). The appropriate standard for determination of child custody, and factors to be considered were set forth in Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983) as follows:
We reaffirm the rule that the polestar consideration in child custody cases is the best interest and welfare of the child. The age of the child is subordinated to that rule and is but one factor to be considered. Age should carry no greater weight than other factors to be considered, such as: health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school and community record of the child; the preference of the child at the age sufficient to express a preference by law, stability of home environment and employment of each parent, and other factors relevant to the parent-child relationship.
¶ 17. The question which this Court must first resolve is whether the chancellor applied the appropriate legal standard. The resolution of this issue does not turn solely on the case style referred to by the chancellor in referencing the appropriate standard. It also requires that this Court view carefully the chancellor's findings to determine whether he has applied the proper standard, even if misstating the case style.
¶ 18. When this is done, it appears that the chancellor's intent was to apply the *1025 Albright standard and factors. His specific findings reference (1) the age of the child, (2) the relative parenting skills of the parties, (3) the moral fitness of the parents, (4) stability of the home environment, and (5) other relevant factors to the parent-child relationship. These are among the factors enumerated in Albright. While it appears that the chancellor intended to apply the Albright factors, this Court must resolve the question of whether those factors have been properly applied.
¶ 19. When considering a modification of child custody, the proper approach is to first identify the specific change in circumstances, and then analyze and apply the Albright factors in light of that change. Where there is no specific identification of the alleged change in circumstances, this Court is placed in the position of attempting to guess what the chancellor determined was a proper basis for a change in custody. While it is true that the trial court has attempted to apply the Albright factors, the court's opinion does not reflect what the prior conditions were.
¶ 20. By way of example, in item f, the trial court states that the mother provides no moral training for the child. However, the unanswered question in that finding is whether or not she provided moral training prior to the divorce, or when the initial custody decision was made?
¶ 21. In Powell v. Ayars, 792 So.2d 240 (Miss.2001) our Supreme Court held that not only must a chancellor apply the Albright factors to child custody cases, he must do an on the record analysis of each of the factors. The failure to do so is reversible error. Id. at (¶ 8) The record before this Court indicates that the chancellor attempted to apply some of the Albright factors. However, the record is silent as to consideration accorded the other Albright factors.
¶ 22. Because the chancellor failed to first identify a specific change in circumstance, and then do an on the record analysis of each of the Albright factors, we are compelled to reverse.
¶ 23. Accordingly, this Court affirms denial of modification of child support and reverses and remands on the issue of custody.
¶ 24. THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY IS AFFIRMED ON THE DENIAL OF MODIFICATION OF CHILD SUPPORT AND IS REVERSED AND REMANDED ON THE ISSUE OF CHILD CUSTODY FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. THE APPELLEE IS ASSESSED ALL COSTS OF THIS APPEAL
IRVING, AND CHANDLER, JJ., CONCUR. THOMAS, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, J. SOUTHWICK, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J., AND MYERS, J. BRIDGES, J., NOT PARTICIPATING.
THOMAS, J., concurring:
¶ 25. In cases involving an initial award of custody, as in the case of most divorces, the chancellor is given considerable discretion so long as the chancellor follows the dictates of Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983), which provides that the chancellor consider the following factors in awarding custody:
We reaffirm the rule that the polestar consideration in child custody cases is the best interest and welfare of the child. The age of the child is subordinated to that rule and is but one factor to be considered. Age should carry no greater weight than other factors to be *1026 considered, such as: health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent, and other factors relevant to the parent-child relationship.
Marital fault should not be used as a sanction in custody awards. Relative financial situations is not controlling since the duty to support is independent of the right to custody. Differences in religion, personal values and lifestyles should not be the sole basis for custody decisions.
¶ 26. In cases involving a request for modification of custody, the chancellor's duty is to determine if there has been a material change in the circumstances outlined by Albright since the award of initial custody which has adversely affected the child and which, in the best interests of the child, requires a change in custody. Brawley v. Brawley, 734 So.2d 237, 241 (Miss.Ct.App.1999); Bredemeier v. Jackson, 689 So.2d 770, 775 (Miss.1997); Bubac v. Boston, 600 So.2d 951, 955 (Miss.1992); Phillips v. Phillips, 555 So.2d 698, 700-1 (Miss.1989); Pace v. Owens, 511 So.2d 489, 490 (Miss.1987); Duran v. Weaver, 495 So.2d 1355, 1357 (Miss.1986); Smith v. Todd, 464 So.2d 1155, 1157-58 (Miss.1985); Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss.1984); Marascalco v. Marascalco, 445 So.2d 1380, 1382 (Miss.1984); Kavanaugh v. Carraway, 435 So.2d 697, 700 (Miss.1983). Therefore, the non-custodial parent must satisfy a three part test: a substantial change in circumstances of the custodial parent since the original custody decree, the substantial change's adverse impact on the welfare of the child, and the necessity of the custody modification for the best interest of the child. Brawley, 734 So.2d at 241; Bredemeier, 689 So.2d at 775; Bubac, 600 So.2d at 955; Phillips, 555 So.2d at 700-1; Pace, 511 So.2d at 490; Smith, 464 So.2d at 1157-58. Our supreme court has also noted that "the `totality of the circumstances' must be considered." Wright v. Stanley, 700 So.2d 274, 280 (Miss.1997) (citing Ash v. Ash, 622 So.2d 1264, 1266 (Miss.1993)). Further, it is well settled that the polestar consideration in any child custody matter is the best interest and welfare of the child. Whittington v. Whittington, 724 So.2d 922 (¶ 10) (Miss. Ct.App.1998) (citing Albright, 437 So.2d at 1005).
¶ 27. The majority opinion takes the approach that when considering a change in custody, the chancellor must first identify a specific change in circumstances, and then apply the Albright factors for purposes of a custodial determination. In following this instruction, what "circumstances" are chancellors to consider when they must identify a specific change in circumstances? This instruction forces chancellors to make an impromptu decision that lacks any legal support or consistency from one case to the next. The basic purpose and intended function of Albright was to provide chancellors with a guideline in examining the circumstances which affect the child and, thus, give a systematic means of making such tough decisions. The employment of Albright also provides consistency in the legal field of custody modification. It should also be noted that without the guidance of the Albright factors, a chancellor has no restriction on *1027 what is and what is not "a material change in circumstances." Therefore, Albright is the proper guideline for chancellors to employ in considering the "totality of circumstances" and the "best interests of the child" in making a decision of an original decree of custody as well as a modification of custody.
¶ 28. We stress that in a custody modification proceeding the non-custodial parent's request does not simply mean a reweighing of the Albright factors to see who now is better suited to have custody of the child. Although a re-weighing of Albright factors is triggered, in reviewing the circumstances, there must be shown, we reiterate, a material changenot just a changein circumstances, that has had an adverse affect on the child and which requires, or mandates, a change in custody for the best interests of the child.
¶ 29. In order to clarify the type or magnitude of material changes that warrant a modification of custody, our supreme court explained that when the totality of the circumstances illustrate a material change in the overall living conditions in which the child is found which are likely to remain changed in the foreseeable future and such change adversely affects the child, a modification of custody is legally proper. Kavanaugh v. Carraway, 435 So.2d 697, 700 (Miss.1983). The court has also stated that: "It is only that behavior of a parent which clearly posits or causes danger to the mental or emotional well-being of a child (whether such behavior is immoral or not), which is sufficient basis to seriously consider the drastic legal action of changing custody." Ballard v. Ballard, 434 So.2d 1357, 1360 (Miss.1983). However, "an isolated incident, e.g., an unwarranted striking of a child, does not in and of itself justify a change of custody." Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss.1984). In Tucker, the court also made it clear that a modification of custody should never be made for the purpose of punishing or rewarding either parent. Id.
¶ 30. Plainly stated, a modification of custody is warranted in the event that the moving parent successfully shows that an application of the Albright factors reveal that there has been a material change in those circumstances which has an adverse effect on the child and a modification of custody would be in the child's best interest.
¶ 31. It is for these reasons that I must disagree with the legal analysis applied but nonetheless concur with the result reached due to the chancellor's failure to make sufficient, on the record findings.
LEE, J., JOINS THIS SEPARATE WRITTEN OPINION.
SOUTHWICK, P.J., dissenting:
¶ 32. The majority finds several errors in the chancellor's analysis of the child custody issue. Since I find that the majority is not distinguishing between the original custody decision and that which needs to be made during proceedings for a modification, I write separately.
¶ 33. A preliminary point is this. Opinions of appellate courts have a variety of purposes. One is to resolve the issues raised by the specific litigants. In the course of satisfying that purpose, it is necessary to state the controlling principles as clearly as possible so that future litigants and judges will more easily be able to resolve new controversies. In my view, in this case the majority is announcing an absolute rule never before presented in an opinion by the Supreme Court or this Court, and reversing because the chancellor did not follow this rule. That is occurring even though the chancellor made findings *1028 consistent with a fair reading of what previous Supreme Court opinions required.
¶ 34. As to the specific analysis relevant here, the most basic is a statement of the steps that a chancellor should follow when presented with a claim that custody should be modified from that awarded in a previous decree of the court. The majority states that the requirements are to find a material change of circumstances adverse to the interest of the child, and if one is found, then to apply the factors first announced in Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). Because of a quite recent Supreme Court case, the majority also states that the effect of each factor must be mentioned on the record. Powell v. Ayars ex rel. Ayars, 792 So.2d 240 (¶ 8)(Miss.2001). The Supreme Court held in Powell that failure to state on the record consideration of each of these factors in the initial custody decision is reversible error. To apply the Powell rule to a modification is new law. I also find it to be an unreasonable application.
¶ 35. This is what the Supreme Court has recently reiterated is the process to be followed when a chancellor considers a request to modify custody:
In the ordinary modification proceeding, the non-custodial party must prove: (1) that a substantial change in circumstances has transpired since issuance of the custody decree; (2) that this change adversely affects the child's welfare; and (3) that the child's best interests mandate a change of custody. Bubac v. Boston, 600 So.2d 951, 955 (Miss.1992). A chancellor's finding of fact on such a matter will not be set aside or disturbed on appeal unless the finding is manifestly wrong or is not supported by substantial credible evidence. Polk v. Polk, 589 So.2d 123, 129 (Miss.1991). It is similarly so whether the fact be found expressly or by necessary implication, and whether the finding relates to an evidentiary fact or an ultimate fact. Spain v. Holland, 483 So.2d 318, 320 (Miss.1986).
Bredemeier v. Jackson, 689 So.2d 770, 775 (Miss.1997). The first two numbered steps are sometimes combined, but I find that these requirements have been consistently stated as the analysis for a change in custody. See Brocato v. Brocato, 731 So.2d 1138 (Miss.1999); Ash v. Ash, 622 So.2d Miss (Miss.1993); Newsom v. Newsom, 557 So.2d 511 (Miss.1990).
¶ 36. What is left unstated in that three-step process is whether Albright and its twelve factors must be formally analyzed. If it is, presumably that occurs under the third step when the best interest of the child is considered. However, the Supreme Court has indicated that the modification decision is a much different process than the original decision:
While numerous factors may go into the initial consideration of a custody award, see, e.g., Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983), only parental behavior that poses a clear danger to the child's mental or emotional health can justify a custody change. Ballard v. Ballard, 434 So.2d 1357, 1360 (Miss. 1983).
Morrow v. Morrow, 591 So.2d 829, 833 (Miss.1991). Without saying so explicitly, this at least strongly suggests that on modification all the Albright factors are not relevant. The preeminent Mississippi writer on these issues has said that though Albright is the absolute requirement on initial custody decisions, in "custody modification proceedings, however, different criterial are to be used, and there, only parental or custodial behavior that poses clear danger to the child will be considered." N. SHELTON HAND, JR., MISSISSIPPI DIVORCE, ALIMONY & CHILD CUSTODY 431 n. 7 (1998).
*1029 ¶ 37. There are a considerable number of Supreme Court precedents on modification of custody. Looking only at those from the last few years, many modification opinions do not mention Albright at all: Wright v. Stanley, 700 So.2d 274 (Miss. 1997); Caples v. Caples, 686 So.2d 1071 (Miss.1996); Touchstone v. Touchstone, 682 So.2d 374 (Miss.1996). Others cite it only for reasons other than the twelve factors: Ortega v. Lovell, 725 So.2d 199 (Miss.1998) (change in circumstances must adversely affect child); Riley v. Doerner, 677 So.2d 740 (Miss.1996) (principal consideration is best interest of child). One cited Albright and said that the parties agreed that the factors set out in that precedent were the ones to apply on modification. Brocato v. Brocato, 731 So.2d 1138, 1141-42 (Miss.1999). The Court itself did not make a holding on that point. Other cases have mentioned Albright without detailing each factor or saying that the chancellor must apply it. E.g., Mercier v. Mercier, 717 So.2d 304, 306 (Miss.1998).
¶ 38. Whether Albright even makes sense as an obligation for a chancellor in a modification can best be viewed by looking at the list of factors:
Age should carry no greater weight than other factors to be considered, such as: health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent, and other factors relevant to the parent-child relationship.
Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). Those are to be utilized during the initial custody determination when each parent starts with an equal right to custody. An evaluation of each of the factors, but not a mathematical computation, then results in a decision by the chancellor as the proper parent to have custody.
¶ 39. A modification has a different function. The Albright analysis has already been undertaken and led to an initial custody decision. In some situations, the initial decision is now unworkable. In those events, often when custody is joint with parents who still live in the same area, leading to frequent changes in the residence of the child each month, a reapplication of Albright may well be needed. Lackey v. Fuller, 755 So.2d 1083, 1088-89 (Miss.2000). No adverse effect on the child has to be found in those situations, but only a custody arrangement that has become impractical. Id.
¶ 40. In other situations such as the one on this appeal, the original decision to place custody with one of the parents has had an adverse impact on the child. That is what the chancellor determined here under the first two steps of the modification analysis. Having found that the child is in an adverse situation with the custodial parent, must the court then undertake an Albright review? I see no reason to apply such a rigid rule, especially when the Supreme Court has not. Sometimes it could be useful; other times it is superfluous.
¶ 41. The proceedings here involved a considerable number of witnesses, whose testimony largely addressed the home situation of each parent. Questions were asked about the amount that each drank, their respective willingness to expose their *1030 child to immoral conduct, and other possible negative impacts on the child. When the testimony was concluded, the chancellor had to decide whether the present situation was having an adverse impact on the child, and whether it would be in the child's best interest to make a change. The result was expressible in terms of Albright, but for us to require that terminology creates procedural rigidity that serves no useful purpose. Most of the Albright factors were not even discussed in the testimony that the chancellor heard. This was not the initial custody decision in which the parties were trying to address all these issues, but a modification in which one parent was saying that existing custody was hurting the child and the other was attempting to prove that it was not.
¶ 42. Albright was written in order to create structure for the initial custody decision, to force chancellors to inform the parties and, if necessary, the appellate courts as to what specifically were the reasons for the choice between two fit parents. It is both simplistic and unnecessarily formalistic to impose that same set of rules on modification decisions. It figuratively becomes just a ticket to be punched, or literally a list to check off, which adds little to many modification decisions. I find that here it would have added nothing at all.
¶ 43. One final point should be made about the chancellor's decision. The majority takes him to task for citing the "Caldwell v. Caldwell factors." That may not have been the most pointed authority to use, but at least it unlike Albright is a case concerning modification. Caldwell v. Caldwell, 579 So.2d 543 (Miss.1991). To the extent Caldwell announced important law, it was in restating a list of considerations for modifying child support, not custody. It is evident, as the majority itself demonstrates from its quoting of the chancellor's opinion, that he used none of those "Caldwell factors." There was almost no evidence of those financial matters for the chancellor to consider anyway. Caldwell does relevantly state that before there is a modification, there must be proof of "a substantial or material change in the circumstances of one or more of the interested parties: the father, the mother, and the child or children, arising subsequent to the entry of the decree to be modified." Id. at 547, quoting Tedford v. Dempsey, 437 So.2d 410, 417 (Miss.1983). Thus, what immediately follows the reference to Caldwell in the chancellor's opinion is a set of findings that are precisely applicable to the three-step modification analysis that had to be undertaken. The chancellor sets out what the adverse impacts on the child have been, and finds that it would be in the best interest of the child to make a change in custody. To cite a poor precedent for the analysis does not invalidate the findings.
¶ 44. A three-part test is all the Supreme Court has explicitly held that chancellors must apply. This chancellor did what he reasonably found under existing caselaw he was to do. I would affirm, relying on the discretion of the chancellor, the significance of the evidence of the need for a change, and the absence of meaningful evidence of any adverse impact on the child of a change.
McMILLIN, C.J. AND MYERS, J., JOIN THIS SEPARATE OPINION.