878 So.2d 1061 (2004)
James A. JONES, Appellant
v.
Rayna L. JONES, Appellee.
No. 2003-CA-00247-COA.
Court of Appeals of Mississippi.
July 20, 2004.
*1062 David R. Daniels, attorney for appellant.
Dempsey M. Levi, Sarah E. Berry, Ocean Springs, attorneys for appellee.
EN BANC.
BRIDGES, P.J., for the Court.
¶ 1. James and Rayna Jones, who have three children, divorced in the State of Washington in 2001. The oldest child, Kristopher, was twenty-one years old at *1063 the time of the divorce. Sarah was sixteen years old, and Benjamin was eight years old. James was awarded paramount custody of the children. All parties subsequently moved to Mississippi. In 2002, Rayna filed a complaint to enroll the foreign judgment requesting modification. Both parties subsequently filed motions for contempt. After the trial, the chancellor entered a judgment modifying the divorce and changing custody from James to Rayna. James has timely filed this appeal.

STATEMENT OF THE ISSUES
I. DID THE CHANCELLOR ERR BY FAILING TO FIND RAYNA IN CONTEMPT OF COURT DESPITE PLAIN EVIDENCE, INCLUDING AN ADMISSION, THAT SHE WAS IN CONTEMPT?
II. DID THE CHANCELLOR ERR IN GRANTING RAYNA RELIEF WHILE SHE HAD "UNCLEAN HANDS?"
III. DID THE CHANCELLOR ERR IN MODIFYING THE CUSTODY ARRANGEMENT IN THE ABSENCE OF A SUBSTANTIAL MATERIAL CHANGE IN CIRCUMSTANCES ADVERSE TO THE MINOR CHILDREN?

FACTS
¶ 2. Rayna and James Jones were married for nearly twenty-five years. The divorce in Washington appears to have been amicable, for neither party appealed. Rayna did not elect to be represented by counsel during the divorce. She argues that she willingly gave up custody of her children because James told her that an award of paramount custody was merely a formality, and he would not interfere with her ability to spend time with the children. Additionally, Rayna testified that, at the time of the divorce, she believed that James' custody of the children would provide the children with more stability because Rayna would not immediately be employed after she moved to Mississippi. While Rayna admits that she regrets ceding custody of her children, she also points out that at the time James was awarded custody, she was not fit to have custody of the children because of mental duress and her imminent unemployment. Shortly after the May 2001 divorce, James transferred to Mississippi. Rayna moved to Mississippi in June 2001 and found employment as a nurse. James married Shirley in February 2002. Rayna is presently involved with a man named Russell, who moved from Washington to Mississippi shortly after Rayna moved. He maintains his own residence in Mississippi.
¶ 3. The children do not care for their step-mother. Sarah's complaints about Shirley stem from the fact that Sarah does not appreciate the maternal role Shirley is attempting to play in the children's lives. For example, Sarah testified that she is unhappy that Shirley corrects Benjamin's table manners, and Sarah resents the fact that Shirley tells James when Sarah breaks household rules. Kristopher, the oldest child, testified that the children do not seem as happy living with their father, and that James is quite controlling. Kristopher also testified that since Benjamin has been living with his father Benjamin has fits of anger, stomachaches, and cries without explanation.

ANALYSIS

I. DID THE CHANCELLOR ERR BY FAILING TO FIND RAYNA IN CONTEMPT OF COURT DESPITE PLAIN EVIDENCE, INCLUDING AN ADMISSION, THAT SHE WAS IN CONTEMPT?
*1064 ¶ 4. The standard of review for a citation for contempt is determined upon the facts of each case and is a matter for the trier of fact. Milam v. Milam, 509 So.2d 864, 866 (Miss.1987). A citation is proper when "the contemnor has willfully and deliberately ignored the order of the court." Bredemeier v. Jackson, 689 So.2d 770, 777 (Miss.1997). The factual findings of the chancellor in civil contempt cases are affirmed unless manifest error is present. Purvis v. Purvis, 657 So.2d 794, 797 (Miss.1994) (citing Caldwell v. Caldwell, 579 So.2d 543, 545 (Miss.1991)). Contempt matters are committed to the sound discretion of the trial court, and we will not reverse where the chancellor's findings are supported by substantial credible evidence. Id. With respect to issues of fact where the chancellor made no specific finding, this Court proceeds on the assumption that the chancellor resolved all such fact issues in favor of the appellee, or at least in a manner consistent with the decree. Smith v. Smith, 545 So.2d 725, 727 (Miss.1989).
¶ 5. The chancellor denied both parties' respective contempt motions and dismissed them as moot. James argues that Rayna should be found in contempt of the Washington judgment of divorce, which provided, in particular, as follows:
[N]either parent shall:
a. Ask the children to make decisions about this schedule, or discuss this schedule with the children except for plans previously ordered or agreed to between the parents;
b. Encourage the children to change their primary residence or to believe such a change is the children's choice;
c. Discuss child support or any case-related financial issues with the children; or
d. Use the children directly or indirectly to gather information about the other parent or carry messages from one parent to another.
¶ 6. In support of his argument for contempt, James offers e-mails sent between the parents which Rayna forwarded to Sarah. James further offers e-mails from Rayna to Sarah in which Rayna discusses her finances, her frustration with the litigation, and a number of other issues. Rayna also forwarded Sarah correspondence from James in which he and Rayna discussed the litigation. Rayna argues that both parties engaged in activities which violated the Washington decree. Rayna further argues that if she violated the decree, she did so unintentionally, and that she was only responding to Sarah's pleas to leave James' home.
¶ 7. There are several available defenses to a civil contempt charge. One defense is that whatever violation there may have been of a decree or order was not willful or deliberate such that the behavior in question may not be labeled as contumacious. Dunaway v. Busbin, 498 So.2d 1218, 1222 (Miss.1986). The chancellor found that neither party's actions rose to a level of willful and deliberate insubordination which would warrant finding either party in civil contempt. This Court cannot say that the chancellor, after hearing the testimony and reviewing the evidence, abused her discretion in finding that neither party's actions were so egregious as to merit a harsh finding of civil contempt. Accordingly, this assignment of error is without merit.

II. DID THE CHANCELLOR ERR IN GRANTING RAYNA RELIEF WHILE SHE HAD "UNCLEAN HANDS?"
¶ 8. James did not cite any authority to support his argument that the chancellor erred in granting Rayna relief despite her alleged "unclean hands." It is well-settled in this state that the failure to *1065 cite authority in support of an argument precludes this Court from considering these issues on appeal. In re Mason, 616 So.2d 322, 327 (Miss.1993), citing R.C. Petroleum, Inc. v. Hernandez, 555 So.2d 1017, 1023 (Miss.1990); Kelly v. State, 553 So.2d 517, 521 (Miss.1989), citing Brown v. State, 534 So.2d 1019, 1023 (Miss.1988), cert. denied, 490 U.S. 1007, 109 S.Ct. 1643, 104 L.Ed.2d 158 (1989), Shive v. State, 507 So.2d 898 (Miss.1987), and Pate v. State, 419 So.2d 1324 (Miss.1982). See also Turner v. Turner, 612 So.2d 1141, 1143 (Miss.1993). Because James did not provide any authority to support his argument, we find this assignment of error to be without merit.

III. DID THE CHANCELLOR ERR IN MODIFYING THE CUSTODY ARRANGEMENT IN THE ABSENCE OF A SUBSTANTIAL MATERIAL CHANGE IN CIRCUMSTANCES ADVERSE TO THE MINOR CHILDREN?
¶ 9. In a domestic case, such as the case at hand, the chancellor's findings will not be reversed unless manifestly wrong, clearly erroneous, or the proper legal standard was not applied. Bland v. Bland, 620 So.2d 543, 544 (Miss.1993).
¶ 10. In cases involving a request for modification of custody, the chancellor's duty is to determine if there has been a material change in the circumstances since the award of initial custody which has adversely affected the child and which, in the best interests of the child, requires a change in custody. Sanford v. Arinder, 800 So.2d 1267, 1271 (¶ 15) (Miss.Ct.App.2001). Furthermore, in showing by the preponderance of evidence that a material change in circumstances has occurred in the custodial home, the burden of proof is on the movant. Riley v. Doerner, 677 So.2d 740, 743 (Miss.1996). The non-custodial parent must satisfy a three-part test and show: a substantial change in circumstances of the custodial parent since the original custody decree, the adverse impact the substantial change has effected on the child's welfare, and that the modification is necessary for the child's best interest. Sanford, 800 So.2d at 1271 (¶ 15) (citations omitted).
¶ 11. A modification of custody is warranted in the event that the complaining parent successfully shows that an application of the Albright factors reveals that there has been a material change in those circumstances which has an adverse effect on the child, and a modification of custody would be in the child's best interest, considering the totality of the circumstances. Id. at 1272 (¶ 18). The best interest of the child is the polestar consideration in all cases dealing with child custody and visitation. Sellers v. Sellers, 638 So.2d 481, 485 (Miss.1994); Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).
¶ 12. The chancellor determined that "material changes in circumstances have occurred since the original custody order."
First, the seventeen-year-old daughter has expressed her strong desire to live with her mother. The Court specifically finds that this custody modification is the sincere desire of the daughter and was not instigated by the mother for her own purposes. Additionally, the Court finds that Commander Jones' control and invasion of her privacy have made Sarah unhappy in his home and the living conditions at his home are psychologically unhealthy for her. Sarah sought help from the school counselor to have someone to discuss her predicament with. Finally, a material change has also occurred in that while the living conditions have deteriorated at the father's, the mother's home environment *1066 offers a better option "that did not exist at the time the original custody determination was made." See, Hoggatt [sic]. (footnote omitted).
¶ 13. This Court does not agree that the preference of a disgruntled seventeen-year-old child constitutes a material change in circumstances. However, after a careful review of the record, this Court cannot find that the chancellor abused her discretion in determining that the circumstances of the custody arrangement had materially changed and that the change was detrimental to the children. The chancellor heard testimony from a number of witnesses who described how James had become more controlling since the divorce. There was testimony that James "inventories" the children's items when they return from Rayna's and that the children (Benjamin especially) would become greatly distressed for fear of not remembering to bring everything back to James' house. There was testimony that the father eavesdropped on Sarah's telephone conversations and that Benjamin had less opportunity to talk to his mother on the telephone. James reviewed Sarah's bank statements and, at one point, read Sarah's e-mails until Sarah changed to another account. The chancellor heard testimony that James prevented Rayna from sending e-mails to Benjamin. These changes have resulted in Benjamin's frequent stomach aches, fits of anger, and outbursts of tears, and Sarah has begun seeing a counselor at school. The chancellor clearly found that a material change in circumstances had occurred and that the change was detrimental to the children's best interests. Furthermore, in her thirty-four page opinion and judgment the chancellor considered the testimony, the detrimental change in circumstances, and the adverse effect such changes were having upon the children. This Court cannot find that the chancellor abused her discretion in finding that the children's best interests would be served in transferring custody to Rayna. Accordingly, this assignment of error is without merit.
¶ 14. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED AGAINST THE APPELLANT.
KING, C.J., LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. SOUTHWICK, P.J., CONCURS IN RESULT ONLY.