914 So.2d 743 (2005)
Cindy Lea (Greene) MARTER, Appellant
v.
Jeffrey Duane MARTER, Appellee.
No. 2004-CA-00472-COA.
Court of Appeals of Mississippi.
July 26, 2005.
Rehearing Denied November 15, 2005.
*745 M. Kevin Horan, Vanessa Ann Winkler-Price, attorneys for appellant.
James P. Vance, Grenada, attorney for appellee.
Before LEE, P.J., GRIFFIS, and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. The chancellor modified the original divorce decree and transferred paramount physical custody from the mother to the father. Finding no error, we affirm.

STATEMENT OF FACTS
¶ 2. On December 16, 2002, Jeffrey Duane Marter (Father) and Cindy Lea Greene Marter (Mother) were granted a divorce decree due to irreconcilable differences by the Chancery Court of Grenada County. Mother and Father were awarded joint legal custody of their children: Rebecca Lindsay Marter (Lindsay) and Lorrin Elizabeth Marter (Lorrin). Mother was awarded the paramount physical care, custody and control of the children. Additionally, Mother and Father agreed to a specific visitation schedule. Mother and the children subsequently moved to Nashville, Tennessee in January 2003.
¶ 3. In July 2003, Father petitioned for a modification of the divorce decree, specifically requesting that the chancellor award physical and legal custody to him arguing that a material change in circumstances had occurred since the decree was issued that was adversely affecting the children. Father additionally requested that he be relieved of the obligation to pay child support, and that Mother be required to make payments for the support and maintenance of the children. Mother filed a counter-petition requesting a citation for contempt alleging that Father had failed to pay one-half of the children's medical expenses as directed by the divorce decree. Following a hearing, the chancellor granted Father's petition and modified the divorce decree. In January 2004, the chancellor awarded paramount physical custody of the children to Father having found that a substantial and material change in circumstances adversely affecting the children had occurred and that a modification of the decree was in the best interest of the children. The chancellor further ordered that Mother pay $200 a month in child support.
¶ 4. Mother then filed a petition to set aside the order and for a new trial or, in the alternative, a motion to alter or amend the judgment. The chancellor denied the motion for a new trial in February 2004; however, he granted Mother's petition as to the issue of her monthly child support payments. The chancellor reduced the payments from $200 to $180. Aggrieved by the chancellor's decision, Mother appeals asserting the following: (1) whether *746 the chancellor failed to specifically identify a material change in circumstances adversely affecting the welfare of the minor children prior to analyzing whether a change in custody was warranted; (2) whether Father proved by substantial, credible evidence that a material change in circumstances had occurred which affected the welfare of the children; and (3) whether the evidence supported the chancellor's finding that the best interests of the children would be served by a change of custody.

ISSUES AND ANALYSIS

I. Whether the chancellor failed to specifically identify a material change in circumstances adversely affecting the welfare of the minor children prior to determining whether a change in custody was warranted.
¶ 5. Mother asserts that the chancellor erred in failing to identify a specific, material change which had an adverse impact on the children prior to conducting an Albright[1] analysis.
When considering a modification of child custody, the proper approach is to first identify the specific change in circumstances, and then analyze and apply the Albright factors in light of that change. Where there is no specific identification of the alleged change in circumstances, this Court is placed in the position of attempting to guess what the chancellor determined was a proper basis for a change in custody.
Sturgis v. Sturgis, 792 So.2d 1020, 1025(¶ 19) (Miss.Ct.App.2001). Mother maintains that this error requires a reversal by this Court. See Thornell v. Thornell, 860 So.2d 1241, 1243 (¶ 8) (Miss.Ct.App.2003).
¶ 6. The standard of review regarding both the questions of law and the findings of fact is as follows: as to questions of law, an appellate court reviews de novo whether the trial court applied the proper legal standard in deciding a custody modification request. Morgan v. West, 812 So.2d 987, 990 (¶ 8) (Miss.2002). As to the findings of fact, the chancellor, as fact-finder, "is entitled to substantial deference when his determinations are subjected to attack on appeal and appellate review searches only for an abuse of discretion." Rogers v. Morin, 791 So.2d 815, 826 (¶ 39) (Miss.2001).
¶ 7. This issue involves whether the chancellor applied the proper legal standard in deciding Father's request for a modification of the custody order, and as previously mentioned, this issue mandates a de novo review by this Court. The chancellor's December 2003 opinion specifically addressed the Mississippi Supreme Court's sequential prerequisites for modifying a custody decree as articulated by this Court:
First, a party must show that since entry of the judgment or decree sought to be modified, there has been a material change in circumstances which adversely affects the welfare of the child. Second, the party must also show that the best interest of the child requires a change in custody.
Creel v. Cornacchione, 831 So.2d 1179, 1183 (¶ 15) (Miss.Ct.App.2002) (citing Smith v. Jones, 654 So.2d 480, 486 (Miss.1995)). Additionally, the Mississippi Supreme Court was clear that "not every change in circumstances is so adverse that a modification of custody is warranted; however, the chancellor must consider the circumstances of each case in light of the *747 totality of the circumstances." Creel, 831 So.2d at 1183 (¶ 15) (citing Ash v. Ash, 622 So.2d 1264, 1266 (Miss.1993)). The Mississippi Supreme Court has explicitly detailed the sequence which the chancellor must follow when considering a petition to modify a child custody decree:
Even though the chancellor finds a material[,] adverse change in circumstances, a change in custody is not automatic. That finding is merely the first step, the one which then authorizes and indeed challenges the chancellor to then go forward and determine whether the best interests of the child justify a change in custody.
Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss.1984).
¶ 8. The record clearly shows that the chancellor articulated the correct legal standard. That, however, is not by itself sufficient, and so we now consider whether the chancellor applied that standard appropriately. As previously stated, before a custody decree may be modified, the chancellor must first find that a material change in circumstances has occurred which adversely affects the welfare of the child, and then the chancellor must analyze the Albright factors to determine whether the best interest of the child will be served by a change in custody. In reviewing the record, it is clear to this Court that the chancellor determined, based on the totality of the circumstances, that Mother's relocation out-of-state with the children, which had occurred since the initial custody decree, created a material change in circumstances which was adversely affecting the welfare of the children. The chancellor, while acknowledging that this case involved a "close call," determined that the overall change in the children's environment and living conditions constituted the requisite material change. The chancellor then proceeded with an Albright analysis before making a final determination of the request to modify the child custody decree. This Court will review the factual basis for the chancellor's decision momentarily; however, we find at this juncture that Mother's argument as to this issue is without merit. The chancellor applied the correct legal standard as established by the Mississippi Supreme Court and was not in error in this regard.

II. Whether Father proved by substantial, credible evidence that a material change in circumstances had occurred which affected the welfare of the children.
¶ 9. We turn now to Mother's second argument that there was not substantial, credible evidence to support the chancellor's decision that a material change in circumstances had occurred, since the original custody decree was issued, which adversely affected the welfare of the children. Mother argues that the chancellor erred in seemingly placing considerable weight on Mother and the children's relocation to Tennessee. Mother argues that this change in circumstances could not be considered because the parties had been aware of this possibility at the time of the initial custody determination. See Lambert v. Lambert, 872 So.2d 679 (Miss.Ct.App.2003) (a custodial parent's relocation without more is insufficient grounds for modification of child custody). The chancellor, however, found more than merely a previously contemplated relocation as Mother asserts and as was discussed in Lambert. The chancellor specifically noted in his opinion that the move to Tennessee did not justify a modification of the child custody decree. However, the chancellor did determine that the relocation precipitated an overall change in circumstances in the children's living conditions which had an adverse affect on the children's welfare.
*748 ¶ 10. Before proceeding to discuss the chancellor's specific findings, we recall that the standard of review regarding the chancellor's findings of fact is abuse of discretion. The chancellor found that, based on their relocation, Mother and the children had no extended family or friends in Tennessee; the children were repeatedly left at home alone for hours in a strange place; Lindsay's school grades dropped initially; Lorrin, age nine, was left home alone twice during stormy weather which frightened her; Lindsay, age thirteen, expressed a legally relevant desire to live with her father; and a licensed psychological counselor, who testified as an expert witness for Father, stated that in his opinion, Lindsay had been adversely affected by the consequences of the relocation. Before proceeding, we are mindful that the chancellor, as the trier of fact, hears the evidence first-hand and is in the best position to make the difficult decisions regarding the issues of witness credibility and the degree of weight to afford the various aspects of the evidence. Rogers, 791 So.2d at 826 (¶ 39).
¶ 11. Mother further asserts that since many of the previously mentioned findings of fact had been rectified, the chancellor should not have considered them. Mother points the Court's attention to Kavanaugh v. Carraway[2] for the proposition that a change in custody is only legally proper when the totality of the circumstances display a material change in the overall living conditions in which the children are found which is likely to remain unchanged in the foreseeable future. Kavanaugh, however, is factually distinguishable from this appeal in that it involved a change in custody from the mother based on the mother having lived with her new husband for one month prior to their marriage. Kavanaugh, 435 So.2d at 698-99. The Kavanaugh court determined under the totality of the circumstances that the chancellor had erred in removing the children from the mother's custody solely based on the month long co-habitation; the Mississippi Supreme Court determined that the facts of that case failed to demonstrate a detrimental effect on the children. Kavanaugh, 435 So.2d at 701.
¶ 12. Kavanaugh involved a singular event which was rectified after one month. This appeal, in contrast, involved multiple events, some of which were no longer occurring at the time the chancellor heard the petition to modify the custody decree; others, however, were ongoing. More importantly, the chancellor in Kavanaugh did not even address the issues of the care and circumstances of the children. Kavanaugh, 435 So.2d at 699. In Kavanaugh, the chancellor's sole concern was the month long period of co-habitation. Id. We, therefore, conclude that Kavanaugh is not dispositive based on the facts of this appeal.
¶ 13. Mother also argues that a child custody decree can only be modified when "the behavior of a parent causes danger to the mental or emotional well-being of a child...." Ballard v. Ballard, 434 So.2d 1357, 1360 (Miss.1983). Mother maintains that none of the facts taken into account by the chancellor rise to that requisite level. Our case law, however, does not support Mother's assertion.
¶ 14. The party seeking a custody modification must prove that the material change in circumstances is adversely affecting the welfare of the child. Bredemeier v. Jackson, 689 So.2d 770, 775 (Miss.1997). As Bredemeier reflects, the Mississippi Supreme Court has not established semantic qualifiers in reference to a child's welfare. The concept is intended to encompass *749 its broadest possible meaning in order to protect children, and is certainly not limited only to a child's mental and emotional well-being. Accepting Mother's argument would require this Court to ignore other considerations, such as a child's physical welfare, and we are unwilling to do so. "A chancellor is bound to consider the child's best interest above all else." Riley v. Doerner, 677 So.2d 740, 744 (Miss.1996).
¶ 15. Applying the record facts to Rogers and Jackson, we find that the chancellor was within his discretion to conclude that the overall change in circumstances precipitated by their relocation to Tennessee did rise to the level of having an adverse affect on the children's welfare. Therefore, we are unable to conclude that the chancellor's modification of the custody decree was in error as to this issue.

III. Whether the evidence supported the chancellor's finding that the best interests of the children would be served by a change of custody.
¶ 16. The party who petitions for a modification of a child custody order bears the burden of proof by a preponderance of the evidence. Jones v. Jones, 878 So.2d 1061, 1065 (¶ 10) (Miss.Ct.App.2004). In order to satisfy this burden of proof, the proponent must offer evidence which is more convincing than the evidence offered against it. Black's Law Dictionary 1182 (6th ed.1990).
¶ 17. Mother asserts that the chancellor's Albright analysis was incorrect, and that Father did not meet his burden of proof. Mother specifically argues that the chancellor failed to consider much of the evidence Mother presented regarding the overall living conditions of the children at the time of the hearing, and that the chancellor gave undue weight to the children's preference to live with their father.
¶ 18. The Albright factors used to determine the best interest of a child are as follows: (1) the age, health, and sex of the child; (2) determination of the parent that had the continuity of care prior to the separation; (3) which has the best parenting skills and which has the willingness and capacity to provide primary child care; (4) the employment of the parent and the responsibilities of that employment; (5) physical and mental health and age of the parents; (6) emotional ties between parent and child; (7) moral fitness of parents; (8) the home, school, and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) stability of home environment and employment of each parent; and (11) other factors relevant to the parent-child relationship. Hollon v. Hollon, 784 So.2d 943, 947 (¶ 12) (Miss.2001).
¶ 19. If the chancellor improperly considers and applies the Albright factors, this Court is required to address that error. Hollon, 784 So.2d at 946(¶ 11). However, this Court "will not arbitrarily substitute our judgment for that of the chancellor who is in the best position to evaluate all factors relating to the best interests of the child." Ash, 622 So.2d at 1266.
¶ 20. The record reflects that the chancellor conducted an analysis of the Albright factors. The chancellor determined that neither parent was favored as to the issues of their age; physical and mental health; capacity and willingness to provide primary care; moral fitness; and age and sex of the children. The chancellor found that the presence and availability of Father's extended family, including his female relatives, was comparable to the benefit of Mother raising her daughters. Additionally, the chancellor stated that in his opinion the parents were equally qualified *750 as to their parenting skills and willingness and capacity to provide primary child care. The chancellor also found that both parents took the children to church regularly.
¶ 21. As to the remaining factors, the chancellor found that they favored Father having paramount physical custody. The chancellor concluded that Father's parenting skills outweighed Mother's because the chancellor concluded that "it seem[ed] that Father was more concerned with all aspects of the girl[s'] lives." The record reflects that due to their relocation to Tennessee, the children were separated from their friends and extended family; they had been left alone without parental supervision on multiple occasions; and Lorrin had a medical condition which was not treated in a timely manner. The chancellor further concluded that Father had stable employment in his family business which allowed him greater flexibility in caring for the children. The record reflects that Mother had changed jobs subsequent to Father filing his petition for a change in custody. Mother's new job was chosen to alleviate some of the supervision issues, however, it only paid $12,000 per year. The chancellor also concluded that the children had separate rooms at Father's house, yet had to share a room at Mother's house. The record also reflects that after the relocation, the children were no longer participating in the myriad of extra-curricular activities as they had when they lived in Mississippi. The record further reflects that both Lorrin and Lindsay testified that they wished to live with their father. As a thirteen year old, Lindsay's stated preference was legally relevant. See Miss.Code Ann. § 93-11-65 (Rev.2004).
¶ 22. Mother's arguments, in essence, simply challenge the chancellor's conclusions. Having thoroughly reviewed the record, we conclude that the chancellor applied the correct legal standard and properly applied the Albright analysis. Our review reflects that there was substantial, credible evidence to support the chancellor's decision, and we are unable to conclude that the chancellor abused his discretion in concluding that Father's evidence was more convincing than the evidence offered by Mother. It is not within our authority to substitute our judgment for that of the chancellor's. This Court's duty is to conduct an appellate review consistent with the appropriate legal standards; it is neither our duty nor our intention to micro-manage the conduct of the trial courts and to substitute our judgment for that of the trial judge. We, therefore, affirm the chancellor's decision to modify the custody decree and award paramount physical custody of the children to Father.
¶ 23. THE JUDGMENT OF THE CHANCERY COURT OF GRENADA COUNTY AWARDING PARAMOUNT PHYSICAL CUSTODY OF THE CHILDREN, REBECCA L. MARTER AND LORRIN E. MARTER, TO THEIR FATHER, JEFFREY D. MARTER IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS, AND BARNES, JJ., CONCUR.
NOTES
[1] Albright v. Albright, 437 So.2d 1003 (Miss.1983).
[2] Kavanaugh v. Carraway, 435 So.2d 697 (Miss.1983).