926 So.2d 253 (2006)
Sharon Ann Walker HARPER, Appellant
v.
Louis Lamont HARPER, Appellee.
No. 2004-CA-02107-COA.
Court of Appeals of Mississippi.
April 11, 2006.
*254 William Paul Starks, Starkville, attorney for appellant.
Luanne Stark Thompson, Aberdeen, attorney for appellee.
Before MYERS, P.J., CHANDLER and GRIFFIS, JJ.
CHANDLER, J., for the Court.
¶ 1. In 1997, the Chancery Court of Monroe County granted Louis Lamount Harper and Sharon Ann Harper a divorce on the ground of irreconcilable differences. The parties agreed to joint physical and legal custody of their two minor children. The parties also agreed that Sharon would have primary physical custody of the children during the school year. On June 23, 2004, Louis filed an action requesting modification of custody. The trial court conducted a hearing on the merits and modified custody granting Louis primary physical custody of J.J. The chancellor issued the final order on September 20, 2004. Sharon appeals, raising the following issues:

I. WHETHER THE CHANCELLOR ERRED IN FINDING A MATERIAL CHANGE IN CIRCUMSTANCES.

II. WHETHER THE CHANCELLOR ERRED IN GRANTING LOUIS HARPER PRIMARY CUSTODY.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Louis and Sharon were divorced on March 7, 1997, in Monroe County, Mississippi. The Monroe County courts have maintained jurisdiction throughout the parties' litigation. Louis continues to live in Monroe County. The parties agreed to joint physical and legal custody, with Sharon Harper having primary physical custody of the parties' two children during the school year. The children are Kendra and Louis Harper, Jr., also known as J.J. Kendra was born on October 24, 1988, and J.J. was born on January 17, 1991. J.J. is afflicted with Down Syndrome and he has moderate special needs.
*255 ¶ 4. Around the time of the divorce in 1997, Sharon moved to Minneapolis, Minnesota with Kendra and J.J. For approximately eight years, both of the children resided in Minnesota with Sharon. The children spent every summer with Louis in Mississippi. In 2004, Kendra wanted to move to Mississippi to attend school. At that time, Sharon and Louis agreed to allow Kendra to move to Mississippi and live with her father.
¶ 5. On June 23, 2004, Louis filed a "Complaint for Contempt, for Emergency Relief, and for Modification of Child Custody." Louis alleged that a material change in circumstances had occurred with regard to the custody of J.J. when Kendra moved to Mississippi. Sharon Harper denied the allegation in her response and counterclaim. The trial court ordered physical custody of J.J. to Louis. On appeal, Sharon contends that there was not a material change in circumstances when Kendra moved to Mississippi. Sharon argues, even if the chancellor found a material change in circumstances, the change was not adverse to J.J. and should not result in a modification of child custody.

STANDARD OF REVIEW
¶ 6. In custody cases, an appellate court must affirm findings of fact by chancellors in domestic cases when they are supported by substantial evidence. Holloman v. Holloman, 691 So.2d 897, 898 (Miss.1996). The appellate court must reverse the chancellor's decision only if it is manifestly wrong or clearly erroneous, or if the chancellor applied an erroneous legal standard. Brocato v. Brocato, 731 So.2d 1138, 1140 (¶ 8) (Miss.1999).
¶ 7. When determining whether to modify a previous child custody order, the chancellor must "determine if there has been a material change in circumstances since the award of initial custody which has adversely affected the child and which, in the best interest of the child, requires a change in custody." Sanford v. Arinder, 800 So.2d 1267, 1271 (¶ 15) (Miss.Ct.App. 2001).

ANALYSIS

I. WHETHER THE CHANCELLOR ERRED IN FINDING A MATERIAL CHANGE IN CIRCUMSTANCES.
¶ 8. On appeal, Sharon contends that a material change in circumstances did not occur when Kendra moved to Mississippi. At trial, both Sharon and Louis stipulated that the custody of Kendra was to be changed from Sharon to Louis. Both parties also stipulated to the fact that this was in the best interest of Kendra. Next, the chancellor questioned, "[b]y virtue of that [referring to the change in custody of Kendra], that constitutes a substantial and material change since the rendition of the previous decree of this Court; is that correct?" Louis's counsel replied, "[y]es, your honor." Sharon's trial counsel did not respond.
¶ 9. The chancellor again addressed the stipulation during his bench ruling by stating, "the parties stipulated prior to beginning the case that it would be in the best interest and welfare of Kendra to live with her father and that that constituted a substantial and material change in which the Court could modify that decree and did so." In the bench ruling, the chancellor also stated "[i]t having been stipulated that there are material and substantial changes which merit a revisitation of the issue of custody with regard to the minor child, and, principally, because the older sibling, Kendra, would be moving back with her father to Mississippi, then the Court really goes directly to the Albright factors." There was no objection by either party *256 with regard to either of the judge's comments in the bench ruling.
¶ 10. A stipulation of fact is a fact which both parties agree is true. Wilbourn v. Hobson, 608 So.2d 1187, 1189 (Miss.1992). Sharon had multiple opportunities prior to trial and during the bench ruling to inform the court that she did not stipulate that there was a material and substantial change in circumstances. When parties agree to a stipulation, "[n]either party can later change positions." Id. Because Sharon's trial counsel did not respond or object to the stipulation, the issue of what constitutes a substantial and material change was not addressed by the chancellor. "Where a party fails to preserve his objection for appeal, he can assert the error on appeal only by arguing that there was plain error." Waldon v. State, 749 So.2d 262, 267 (¶ 14) (Miss.Ct.App.1999) (citing Brown v. State, 690 So.2d 276, 297 (Miss.1996)). Sharon's counsel does not assert that the failure to respond to the stipulation was plain error. Sharon merely argues that the material and substantial change in circumstances did not occur. We hold that the parties stipulated to the fact that there was a material and substantial change in circumstances. Therefore, the chancellor did not err in finding that a material change in circumstances had occurred.

II. WHETHER THE CHANCELLOR ERRED IN GRANTING LOUIS HARPER PRIMARY CUSTODY
¶ 11. "Once a material change in circumstances as they relate to child custody has been found, the chancellor should use the Albright factors to decide which parent should have custody of the child." Mixon v. Sharp, 853 So.2d 834, 839 (¶ 19) (Miss.Ct.App.2003) (citing Sturgis v. Sturgis, 792 So.2d 1020, 1025 (¶ 19) (Miss.Ct. App.2001)). These factors are: the health and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which parent has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and the responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of the parents; the home, school and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent, and other factors relevant to the parent-child relationship. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).
¶ 12. With regard to the Albright factors, the chancellor found that the continuity of care prior to separation weighs n favor of the mother because she had maintained primary custody over the minor children since the divorce. However, the chancellor found that the home, school and community record of the child; the child's preference; and the Mississippi preference to keep siblings together favored the father.
¶ 13. The chancellor held that the home, school and community record of the child favored the father because the children have numerous friends and relatives located in Monroe County, Mississippi. The chancellor found that J.J. was of sufficient mental and emotional ability to state with clarity where he wanted to live. The chancellor determined that the child expressed a preference to live in Mississippi with his father. Although the chancellor did not give full weight to J.J.'s testimony, the chancellor gave the testimony some weight in evaluating the Albright factors.
¶ 14. The final factor in Albright is any other factor relevant to the parent-child *257 relationship. The chancellor considered the relationship between J.J. and his sister, Kendra. J.J. had been with his sister all of his life. The chancellor found that J.J. depends on Kendra. Mississippi law gives a preference for keeping siblings together. "In the absence of some unusual and compelling circumstances dictating otherwise, it is not in the best interest of children to be separated." Sellers v. Sellers, 638 So.2d 481, 485 (Miss.1994). Therefore, the fact that Kendra would be living in Mississippi weighed in favor of the father.
¶ 15. The chancellor found all of the other factors weighed equally in favor of both parents. The chancellor held that the sibling relationship coupled with the preference stated by J.J. outweighed the continuity of care by the mother. Therefore, the chancellor held that it would be in the best interest of J.J. to live with his father and his sister in Mississippi. Because more factors weighed in favor of the father, the chancellor granted custody of J.J. to Louis.
¶ 16. Sharon claims that the chancellor erred in granting Louis primary custody. She argues that the chancellor failed to give weight to the fact that J.J. was five-years old when he left Mississippi to live in Minnesota with his mother. Sharon contends, although J.J. had extended family in Mississippi, she had been providing care to J.J. for ten months a year for the last eight years. Therefore, she would be better suited to take care of J.J.'s medical condition than the extended family would. The chancellor did give weight to the fact that Sharon had been the primary caregiver since the divorce. However, the chancellor also considered the fact that the children had numerous friends and relatives in Mississippi.
¶ 17. Sharon argues that J.J. should not have been able to testify as to his preference for custody. Since the parties agreed to J.J.'s moderate Down Syndrome condition, Sharon argues that J.J. should not have been able to testify unless he has the capacity of a twelve-year-old child because the Albright factors allow a child over the age of twelve to testify as to preference for custody purposes. Albright, 437 So.2d at 1005. The chancellor found that, although J.J. had Down Syndrome, he was not incommunicative. The chancellor stated that it was "very clear that he wanted to stay with his daddy." Additionally, the chancellor only gave partial weight to J.J.'s preference.
¶ 18. Finally, Sharon contends that the trial court should not have considered that Kendra would be living in Mississippi. Sharon contends that Kendra was involved in many extracurricular activities. Therefore, Sharon argues that the chancellor should not have put much emphasis on the fact that Kendra would be living in Mississippi because she would not be spending that much time with J.J. As previously stated, Mississippi gives preference for keeping siblings together. Sellers, 638 So.2d at 485. Therefore, it was not error for the chancellor to consider where Kendra would be living.
¶ 19. The appellate court can reverse the chancellor's decision only if it is manifestly wrong or clearly erroneous, or if the chancellor applied an erroneous legal standard. Brocato v. Brocato, 731 So.2d 1138, 1140 (¶ 8) (Miss.1999). There is no evidence in this case that the chancellor's decision is manifestly wrong or that the chancellor applied an erroneous legal standard. Therefore, we must affirm the decision of the chancellor.
¶ 20. THE JUDGMENT OF THE CHANCERY COURT OF MONROE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*258 LEE AND MYERS, P.JJ., BARNES, ISHEE AND ROBERTS, JJ., CONCUR. KING, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, IRVING AND GRIFFIS, JJ.
KING, C.J., Dissenting:
¶ 21. I dissent and would reverse and remand this case to the trial court to determine whether there was a material change in circumstances as relates to the child J.J.
¶ 22. On June 23, 2004, Mr. Harper filed an action to modify child custody. That matter was heard by the chancellor on August 26, 2004. When the chancellor called this case, the parties stipulated that the older child, Kendra, wished to live with Mr. Harper, and that it was in her best interest to reside with him. There was no such stipulation as to J. J.
¶ 23. The stipulation as to Kendra, and the lack of any stipulation as to J. J., is evident from the following excerpt from the record:
CHANCELLOR SHANDS: The Court calls Cause Number 96-612(48) S, Louis Harper verses Sharon Harper, and we have Ms. Thompson and Ms. Blalock. Are y'all ready?
MS. THOMPSON: Yes, Your Honor.
MS. BLALOCK: Yes, Your Honor.
CHANCELLOR SHANDS: All right.
If y'all will advise the Court what we're here for today, please.
MS. THOMPSON: Sir? I'm sorry.
CHANCELLOR SHANDS: If you will advise the Court what we're here for today.
MS. THOMPSON: Okay. I'm sorry. We're here today on matters of custody. Counsel opposite and I have agreed to stipulate that the eldest child, Kendra, can remain in the custody of her father, which, of course, would be a change from the current custody that her mother has of her. We've agreed to stipulate to that, so that will not be an issue.
There are two minor children in this cause. Kendra, being the oldest, 16, has stated her preference to remain with her father, and then the younger child, who is J.J., is 13 and will be actually the purpose of our litigation today.
CHANCELLOR SHANDS: Okay. Now, Kendra Elaine Harper, 16 years of age, that's the child y'all are stipulating that custody will be changed from that of the mother to the father?
MS. THOMPSON: Yes, Your Honor.
MS. BLALOCK: Yes, Your Honor.
CHANCELLOR SHANDS: All right, Now, are you going to stipulate that that's in this child's best interest and welfare?
MS. THOMPSON: Yes, Your Honor.
CHANCELLOR SHANDS: All right. By virtue of that, that constitutes a substantial and material change since the rendition of the previous decree of this Court; is that correct?
MS. THOMPSON: Yes, Your Honor.
CHANCELLOR SHANDS: All right. Now, the child you call J.J., you're referring to J.J., is that the child in the petition known as Louis Lamont Harper, Jr.?
MS. THOMPSON: Yes, Your Honor.
CHANCELLOR SHANDS: All right. So any time there is a reference to J.J., we can know that that's Louis Lamont Harper, Jr.?
MS. THOMPSON: Yes, Your Honor.
MS. BLALOCK: Yes, Your Honor.
CHANCELLOR SHANDS: Okay, let's just make sure and get the record clear for anybody that reads this subsequently. So the issue before the Court today *259 will be solely the issue of the custody of J.J.
MS. THOMPSON: Your Honor, yes, and, additionally, I suppose, child support will have to be reviewed, as well, based upon what Your Honor's decision is.
MS. BLALOCK: Your Honor, that's correct.
CHANCELLOR SHANDS: Okay. Is there any stipulation with regard for child support for this oldest child that you're stipulating custody is going to be changed?
MS. THOMPSON: No, Your Honor. We haven'tI think, that's probably going to be dependent upon what happens with the second child.
CHANCELLOR SHANDS: Well, let me make sure I understand. The oldest child, of course, we're required to pay support for this oldest child. Nobody is waiving that.
MS. THOMPSON: Oh, no, sir, we are not. It's just I think that with the situation and the uncertainty, certainly, if my client were to get both children, we would ask that his child support be terminated for the mother and that the mother be assessed child support for both children. Alternatively, if Your Honor decides to let the second child go back with his mother to Minnesota, then, I think, the child support amount should be reviewed, and, perhaps, maybe, Your Honor would find that there would be no child support going as between the parties, due to the fact that each would have a child in their custody.
CHANCELLOR SHANDS: So even though they have a child apiece, it's not necessarily determinative of the fact that that would slick out child support, because one party may have substantially higher income than the other.
MS. THOMPSON: Yes, Your Honor, but, additionally, because of the special needs of the second child, it's my understanding that he does receive a check from the government for a disability.
CHANCELLOR SHANDS: Okay. All right. So the issues before the Court today that you're asking the Court to decide is the custody and for the purpose of what we call the paramount care, custody and control of the minor child, because with the fact that we have one party a resident of Minnesota and one party a resident of Mississippi, the fact of the matter is, however this goes, one party will have custody during the school months, and one party will have custody during the non-school months, so by virtue of the fact that we have such a widespread difference, we're not going to be able to follow the Farese schedule of visitation.
In his bench ruling, the chancellor stated:
But the parties stipulated prior to beginning the case that it would be in the best interest and welfare of Kendra to live with her father and that that constituted a substantial and material change in which the Court could modify that decree and did so.
The only issue before the Court, really, was the custody of J.J., whose real name is Louis Lamont Harper, II, [sic] and then concurrent with that, the issue of support for both children.
It having been stipulated that there are material and substantial changes which merits a revistation of the issue of custody with regard to the minor child, and, principally, because the older sibling, Kendra, would be moving back with her father to Mississippi, then the Court really goes directly to the Albright Factors.
¶ 24. The chancellor, and the majority have indicated that a stipulation as to a material change in circumstances regarding *260 one child is applicable to both of the children concerned. Because I believe that to be an incorrect position, I dissent.
¶ 25. This Court has held that a modification of custody is proper only when there has been a material change in circumstances, which impacts the best interest of the child. Marter v. Marter, 914 So.2d 743, 746 (¶ 8) (Miss.Ct.App.2005). This clearly refers to the individual child for whom a change in custody is sought, and therefore requires that the material change in circumstances be shown to impact the child for whom a custody modification is sought, rather than his or her siblings. The existence of a material change in circumstances must be addressed prior to any possible consideration of custody. Id. (¶ 7)
¶ 26. The chancellor failed to address the question of a material change in circumstances impacting J.J. The majority attempts to cover over this defect by saying, "We hold that the parties stipulated to the fact that there was a material and substantial change in circumstances." A reading of the record shows beyond question that the majority's claim of a stipulation as to a material change in circumstances is only half accurate. What is omitted from the majority's finding is that the stipulation related only to the older child, Kendra.
¶ 27. Because the chancellor failed to address the question of any material change in circumstances impacting J. J., he committed error by ordering a change in custody. I would therefore reverse and remand.
SOUTHWICK, IRVING AND GRIFFIS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.