962 So.2d 574 (2006)
Elizabeth Joy (Selby) GIANNARIS, Appellant
v.
Stephen Andrew GIANNARIS, Appellee.
No. 2005-CA-00498-COA.
Court of Appeals of Mississippi.
September 12, 2006.
Rehearing Denied January 23, 2007.
*576 Dustin Norman Thomas, Wendy C. Hollingsworth, Ocean Springs, attorneys for appellant.
William E. Tisdale, attorney for appellee.
Before LEE, P.J., SOUTHWICK and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. On October 14, 2003, seeking primary physical custody of the parties' minor child, Stephen Giannaris filed a complaint for contempt, modification and other relief in the Harrison County Chancery Court. After a trial, the chancery court transferred primary physical custody of the child to Stephen and granted Elizabeth Giannaris specified visitation. Aggrieved by the judgment, Elizabeth appeals. Finding no error, we affirm.

FACTS
¶ 2. Stephen and Elizabeth were granted a divorce on the grounds of irreconcilable differences on July 30, 2002. At the time of the divorce, the parties' only child, a daughter named Sierra, was approximately three and a half years old. The child custody, child support and property settlement agreement, which was incorporated into the judgment of divorce, granted joint legal custody to both parents and primary physical custody to Elizabeth. Stephen was awarded liberal visitation, including the first and third weekends of the month, two evenings during the week, three weeks in the summer, Father's Day, and alternating Christmas, Thanksgiving, and spring break holidays.
¶ 3. On October 14, 2003, Stephen filed a complaint for contempt, modification and other relief. On December 23, 2003, Elizabeth propounded combined discovery, including interrogatories, requests for production, and requests for admission. On March 1, 2004, the chancery court heard motions in the case and granted Stephen's motion to amend and further allowed him to file an out-of-time response to the combined discovery, including the requests for admission. Stephen filed an amended complaint for contempt, modification and other relief on March 9, 2004. The amended complaint provided a partial list of specific circumstances that were having an adverse effect on the minor child.
¶ 4. A trial was held on August 17, 2004. Elizabeth was called as an adverse witness. She testified that, although she had never denied Stephen visitation, she prevented Stephen's new wife, Anita, from picking up Sierra from day care by not including Anita's name on the "checkout *577 list."[1] Elizabeth further testified that she told Sierra that she planned to change her name by adding "Selby" (Elizabeth's maiden name) and hyphenating it with Giannaris. Elizabeth further testified that she did not learn that Sierra was seeing a therapist until six months after the therapy began, and that she refused to sign a therapy consent form because therapy "would be more detrimental to [Sierra's] health."[2] At the close of the adverse witness examination, Elizabeth's attorney chose to reserve.
¶ 5. During direct examination, Stephen stated that he was a meteorologist for the Navy and that he had recently been transferred to San Diego, California for a three-year duty assignment. He testified that visitation proceeded according to the provisions of the divorce judgment "on most days"; however, he also testified that Elizabeth denied his Tuesday and Thursday night visit for a week in the summer of 2004. Stephen also testified that, during his Thanksgiving 2002 visitation, Elizabeth went to his house, demanded to have Sierra, and in the presence of the child, called Anita a "dirty wh___." Consequently, Anita called the police. Furthermore, Stephen testified that Elizabeth did not allow Sierra to speak of her brother, Mason (from Stephen's marriage with Anita). During her adverse examination, Elizabeth denied that she did not allow Sierra to speak of Mason or Anita.
¶ 6. At the close of Stephen's case, Elizabeth requested a directed verdict concerning custody, which the court denied. Elizabeth then rested her case without calling any witnesses. In a ruling from the bench, the court found that Stephen's move to San Diego constituted a "substantial change in circumstances" due to the substantial amount of time he spends with Sierra, pursuant to the child custody, support, and visitation agreement. The court further found that Elizabeth's refusal to communicate and cooperate with Stephen, as well as her attitude toward Anita, constituted an "adverse circumstance" that was "adverse to [Sierra's] best interest." Next, the court conducted an Albright analysis and determined that the best interest of the child warranted a transfer in custody from Elizabeth to Stephen, with Elizabeth having specified visitation. Aggrieved by the judgment, Elizabeth appeals. She asserts the following issues for this Court's review:
I. Whether the trial court applied an erroneous legal standard in modifying custody.
II. Whether the chancellor erred and/or abused his discretion by finding that there had been a material change in circumstances, warranting a modification of the original divorce and custody decree, because Stephen relocated his residence.
III. Whether the chancellor erred and/or abused his discretion by proceeding to an "Albright analysis" when there had been no credible evidence of a material change in circumstances that adversely affected the minor child and further erred and/or abused his discretion in the application *578 of the Albright factors to the facts of this case.
IV. Whether the trial court erred in accepting licensed clinical worker, Pat Gunkel, as an expert witness.
V. Whether the trial court erred in allowing hearsay testimony to come into evidence through the minor child's father and the "expert," Pat Gunkel.
VI. Whether Stephen presented sufficient credible evidence to support his allegation that there had been a substantial change of circumstances in the custodial home that was expected to continue and to adversely affect the best interest of the minor child, so as to change the terms and conditions of the custody agreement that had previously been established by the trial court.
VII. Whether the trial court erred in failing to deem the requests for admission, propounded by Elizabeth to Stephen, admitted.

STANDARD OF REVIEW
¶ 7. Our review of domestic relations matters is limited. Carrow v. Carrow, 741 So.2d 200, 202(¶ 9) (Miss.1999). The chancellor's findings of fact will not be disturbed on appeal if they are supported by substantial credible evidence. Pacheco v. Pacheco, 770 So.2d 1007, 1009(¶ 8) (Miss. Ct.App.2000) (citing Dunaway v. Busbin, 498 So.2d 1218, 1221 (Miss.1986)). We will not reverse the decision of a chancery court unless the chancellor abused his or her discretion, was manifestly in error, or applied an erroneous legal standard. Carrow, 741 So.2d at 202(¶ 9) (citing Turpin v. Turpin, 699 So.2d 560, 564(¶ 15) (Miss. 1997)).

ISSUES AND ANALYSIS
I. Whether the trial court applied an erroneous legal standard in modifying custody.
II. Whether the chancellor erred and/or abused his discretion by finding that there had been a material change in circumstances, warranting a modification of the original divorce and custody decree, because Stephen relocated his residence.
¶ 8. In Mississippi, the traditional test for child custody modification is well established. Ferguson v. Ferguson, 782 So.2d 181, 183(¶ 5) (Miss.Ct.App.2001). In order to modify a child custody decree, the party seeking modification must first show that, since entry of the decree sought to be modified, there has been a material change in circumstances which adversely affect the welfare of the child. Creel v. Cornacchione, 831 So.2d 1179, 1183(¶ 15) (Miss. Ct.App.2002) (citing Smith v. Jones, 654 So.2d 480, 486 (Miss.1995)). Second, the party must show that the best interest of the child requires a custody modification. Id. Not every change in circumstances is so adverse that it warrants a custody modification; the chancellor must consider the totality of the circumstances. Ash v. Ash, 622 So.2d 1264, 1266 (Miss.1993). "In all custody cases, the polestar consideration is the best interest of the child." Id. (quoting Sellers v. Sellers, 638 So.2d 481, 485 (Miss.1994)).
¶ 9. In the case at bar, the chancellor found that Stephen's move to San Diego constituted a "substantial change in circumstances." He also found that Elizabeth's refusal to communicate and cooperate with Stephen, and her attitude toward Anita, constituted an "adverse circumstance" that was "adverse to [Sierra's] best interest." After determining that a circumstance had occurred which adversely affected the welfare of the child, the chancellor *579 employed the factors from Albright v. Albright, 437 So.2d 1003, 1005 (Miss. 1983) to determine whether the best interests of the child would be served by a change in custody.
¶ 10. Elizabeth asserts that the chancellor employed an incorrect legal standard because he found neither that Stephen's move to San Diego adversely affected Sierra, nor that her attitude toward Anita constituted a material change. She argues that the change in circumstances and the adverse effect cannot be based on two entirely difference things. Thus, Elizabeth argues that the chancellor committed reversible error because he failed to find that the change in circumstances adversely affected the child's welfare. We disagree.
¶ 11. Although the chancellor did not specifically state that Elizabeth's failure to cooperate and communicate with Stephen and her attitude toward Anita was a change in circumstances, the facts imply that this "adverse circumstance" constituted a change in circumstances that arose after the entry of the divorce. Pre-divorce, neither communication and cooperation regarding visitation, nor Stephen's marriage to Anita was an issue. Thus, Elizabeth's behavior was necessarily a change in circumstances that occurred after the original custody determination. Moreover, the chancellor determined that her behavior was adverse to the best interest of the child. Therefore, we find that the chancellor did not employ an incorrect legal standard.
¶ 12. Regarding the chancellor's finding that Stephen's move to San Diego constituted a change in circumstances, Elizabeth argues that "[a] material change of circumstances of the party not having custody of the children is not in and of itself enough to warrant a change of custody." Riley v. Riley, 884 So.2d 791, 793(¶ 9) (Miss.Ct. App.2004). Elizabeth further asserts that Stephen's move was irrelevant to the custody determination for the following reasons: (1) the move foreseeable at the time of the divorce, and (2) the mere moving of one party is insufficient grounds for modification of child custody. Thus, Elizabeth argues that the chancellor erred when he modified custody based on Stephen's relocation.
¶ 13. We note that Elizabeth's assertion, that Stephen's relocation was foreseeable at the time of the divorce, is correct because Stephen was in the Navy at the time the divorce was granted. We must also note, however, that the chancellor did not modify custody based on Stephen's move. In addition to Stephen's move, the chancellor considered Elizabeth's behavior since the divorce (i.e., her failure to cooperate and communicate with Stephen and her attitude toward Anita). Based on Elizabeth's behavior and the adverse effect it had on the welfare of the child, the chancellor proceeded to an Albright analysis. Only after conducting the Albright analysis did the chancellor determine that a change of custody was warranted. Thus, the chancellor did not modify custody because Stephen moved to San Diego. Accordingly, the first two issues presented for our review are without merit.
III. Whether the chancellor erred and/or abused his discretion by proceeding to an "Albright analysis" when there had been no credible evidence of a material change in circumstances that adversely affected the minor child and further erred and/or abused his discretion in the application of the Albright factors to the facts of this case.
¶ 14. Under this assignment of error, Elizabeth first argues that there was no credible evidence of a material change in circumstances which adversely affected the *580 child. Moreover, Elizabeth notes that a material adverse change in circumstances must be found before determining whether the best interests of the child justify a change of custody. Consequently, she asserts that the chancellor erred when he proceeded to an Albright, or best interest of the child, analysis.
¶ 15. We must reiterate that our standard of review is limited. "So long as there is substantial evidence in the record that, if found credible by the chancellor, would provide support for the chancellor's decision, this Court may not intercede simply to substitute our collective opinion for that of the chancellor." Hammers v. Hammers, 890 So.2d 944, 950(¶ 14) (Miss. Ct.App.2004) (quoting Bower v. Bower, 758 So.2d 405, 412 (¶ 33) (Miss.2000)). Furthermore, the chancellor is in the best position to observe the demeanor of the witnesses, to assess their credibility, and to determine how much weight to give to the evidence presented. Mabus v. Mabus, 890 So.2d 806(¶ 51) (Miss.2003) (citing Lee v. Lee, 798 So.2d 1284, 1288(¶ 14) (Miss. 2001)). After reviewing the record, we find that substantial evidence supports the chancellor's finding that Elizabeth's behavior since the divorce constituted a circumstance that was adverse to the welfare of the child. Therefore, we also find that the chancellor did not err in proceeding to an Albright analysis based on this finding.
¶ 16. Under this assignment of error, Elizabeth also argues that the chancellor erred in his application of the Albright factors to the facts of this case. Taking issue with the conclusions that the chancellor drew from the evidence, Elizabeth asserts that six of the thirteen Albright factors clearly favored her, and that the remaining factors were a draw. Consequently, Elizabeth asserts that the chancellor abused his discretion in transferring custody to Stephen, as no factor clearly favored him.
¶ 17. In Albright, the Mississippi Supreme Court stated:
We reaffirm the rule that the polestar consideration in child custody cases is the best interest and welfare of the child. The age of the child is subordinated to that rule and is but one factor to be considered. Age should carry no greater weight than other factors to be considered, such as: health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent, and other factors relevant to the parent-child relationship.
437 So.2d 1005. Other relevant, but not controlling, factors mentioned by the Albright court include the parties' relative financial situations, their differences in religion, and personal values and lifestyles. Id.
¶ 18. Citing Sobieske v. Preslar, 755 So.2d 410, 413(¶ 10) (Miss.2000), Elizabeth argues that the chancellor abused his discretion in finding that the age of the child favored neither parent because of the presumption in Mississippi that a mother is generally better suited to raise a child of tender years. The Sobieske court also noted, however, that this presumption has been significantly weakened, and the age of a child is now only one of the factors to *581 be considered. Id. Thus, even if the chancellor erred in finding that Sierra's age favored neither parent, this error was harmless because the court found that the majority of the factors (seven) clearly favored the father.
¶ 19. Elizabeth's remaining challenges to the chancellor's Albright analysis simply take issue with the conclusions that he drew from the evidence. The chancellor addressed the Albright factors and found that the following seven factors favored Stephen: (1) the mental health of the child (given Stephen's concern for Sierra's mental health); (2) the morals of the parents (slightly in favor of Stephen); (3) stability of the home; (4) the relative financial status of the parties; (5) differences in religion (slightly favored Stephen because of testimony that Stephen and Anita attend chapel at the Air Force base in San Diego and no testimony as to church attendance when Sierra is with Elizabeth); (6) the home, school, and community record of the child; (7) the employment responsibilities and stability of employment favors Stephen. The chancellor further determined that the following five factors favored neither parent: (1) age of the child (almost six years of age); (2) continuity of care; (3) physical and mental health of the parents; (4) the age of the parents; (5) the willingness and capacity to provide for the child. The chancellor also determined that the preference of the child was irrelevant, and that only one factor favored Elizabeth, namely, the sex of the child.
¶ 20. Regarding Elizabeth's challenge to the chancellor's findings, we are mindful of the principle that "[w]here the chancellor properly considers and applies the Albright factors, the appellate court cannot say the chancellor is manifestly wrong; such careful consideration and application by the chancellor precludes reversal on appeal." Jerome v. Jerome, 689 So.2d 755, 757 (Miss.1997) (citing Smith v. Smith, 614 So.2d 394, 397 (Miss.1993)). The chancellor properly conducted a detailed Albright analysis before determining that the best interest of the child warranted a transfer in custody from Elizabeth to Stephen, with Elizabeth having specified visitation. Moreover, our review of the record indicates that there was credible evidence to support the chancellor's findings. Therefore, this issue is without merit.
IV. Whether the trial court erred in accepting licensed clinical worker, Pat Gunkel, as an expert witness.
¶ 21. First, we note that "[o]ur well-settled standard of review for the admission or suppression of evidence is abuse of discretion." Miss. Transp. Comm'n v. McLemore, 863 So.2d 31, 34(¶ 4) (Miss. 2003) (citing Haggerty v. Foster, 838 So.2d 948, 958(¶ 25) (Miss.2002)). Moreover, the decision whether to admit expert testimony is within the trial judge's sound discretion. Id. (citing Puckett v. State, 737 So.2d 322, 342(¶ 57) (Miss.1999)).
¶ 22. Elizabeth argues that the chancellor abused his discretion in allowing Pat Gunkel, a licensed clinical worker, to testify as an expert witness. Elizabeth also asserts that proper procedure was not followed in that Stephen's attorney failed to state in what precise area Ms. Gunkel should be qualified as an expert. Because Ms. Gunkel testified as to whether Sierra had been adversely affected by certain circumstances, Elizabeth concludes that the erroneous admission of Ms. Gunkel's testimony prejudiced her case and adversely affected her substantial rights. We disagree.
¶ 23. At the beginning of Ms. Gunkel's direct examination, Stephen's attorney inquired as to Gunkel's education and occupation, and he introduced her resume into evidence. Regarding her education, Ms. Gunkel stated the following: (1) she received *582 her registered nurse degree from the Mississippi Gulf Coast Junior College in 1979; (2) in 1983, she graduated from the University of Southern Mississippi with a bachelor of science in nursing; and (3) in 1991, she received her master's degree in social work from the University of Southern Mississippi and her Mississippi license for clinical social work. Ms. Gunkel also testified that she belonged to the National Association of Social Workers, and that she worked for the Applied Psychology Center for the past three years. Moreover, Ms. Gunkel testified regarding her experience as a therapist and social worker with young children. At the conclusion of this line of questioning, Stephen's attorney tendered Ms. Gunkel "as an expert witness as a licensed clinical social worker."
¶ 24. Pursuant to Rule 702 of the Mississippi Rules of Evidence, expert testimony should only be admitted if it satisfies a two-pronged inquiry. McLemore, 863 So.2d at 35(¶ 7) (citing Kansas City S. Ry. Co. v. Johnson, 798 So.2d 374, 382(¶ 29) (Miss.2001)). First, the witness must be qualified because of her knowledge, skill, experience or education. Id. (citing M.R.E. 702). Second, "the witness's scientific, technical or other specialized knowledge must assist the trier of fact in understanding or deciding a fact in issue." Id.
¶ 25. In the case at bar, Ms. Gunkel's testimony regarding her education and experience with child therapy and social work clearly satisfies the first prong of the inquiry. Furthermore, the chancellor himself was the trier of fact. Thus, by admitting Ms. Gunkel's testimony into evidence, he necessarily determined that it might assist him in understanding or deciding a fact in issue. Accordingly, we find that the chancellor did not abuse his discretion in allowing Ms. Gunkel to testify as an expert witness. This issue is without merit.
V. Whether the trial court erred in allowing hearsay testimony to come into evidence through the minor child's father and the "expert," Pat Gunkel.
¶ 26. Elizabeth argues that the chancellor allowed hearsay testimony throughout the trial despite her attorney's objections and without any guarantees of the trustworthiness of the statements. Specifically, Elizabeth cites Stephen's testimony that Sierra informed him that "[Elizabeth] does not allow Sierra to speak of her brother, Mason, in [Elizabeth's] home. And when Sierra refers to her  brother, [Elizabeth] is quick to correct her and say, [i]t's your half brother." Elizabeth also maintains that Ms. Gunkel's testimony was nothing more than "rank hearsay." Furthermore, she asserts that the chancellor obviously relied on the hearsay testimony because there was no other significant evidence. Thus, Elizabeth argues that the chancellor's error prejudiced her case and adversely affected her substantial rights.
¶ 27. Rule 803(4) of the Mississippi Rules of Evidence provides in part that the hearsay rule will not exclude "statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made." Rule 803(4) further provides that the term "`medical' refers to emotional and mental health as well as physical health." Moreover, Rule 803(4) provides that these statements are not excluded by the hearsay rule, regardless of the declarant's availability. Based on this rule, we conclude that the chancellor *583 did not err in allowing Ms. Gunkel to testify as to her therapy sessions with Sierra.
¶ 28. Regarding Stephen's testimony, we find that it does fit the definition of hearsay, i.e., "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c). Consequently, we must conclude that the chancellor erred in allowing Stephen's hearsay testimony into evidence. Nonetheless, in addition to Stephen's testimony, the chancellor heard testimony from Elizabeth that she kept Anita from picking up Sierra from day care by not including Anita's name on the "checkout list." The chancellor also heard Elizabeth testify that she told Sierra that her name was going to be changed. In sum, it is clear that the chancellor had other substantial credible evidence on which to base his determination. Thus, we must also conclude that the chancellor's error was harmless.
VI. Whether Stephen presented sufficient credible evidence to support his allegation that there had been a substantial change of circumstances in the custodial home that was expected to continue and to adversely affect the best interest of the minor child, so as to change the terms and conditions of the custody agreement that had previously been established by the trial court.
¶ 29. Under this assignment of error, Elizabeth merely reiterates her arguments made under the first and second issues presented for this Court's review. Thus, we need not revisit the issues.
VII. Whether the trial court erred in failing to deem the requests for admission, propounded by Elizabeth to Stephen, admitted.
¶ 30. Rule 36(b) of the Mississippi Rules of Civil Procedure provides in relevant part:
Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. . . . [T]he court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits.
"Necessary and practicable leniency . . . appear to have generated an air of benevolent gratuity about the administration of Rule 36." Cole v. Buckner, 819 So.2d 527, 531(¶ 13) (Miss.2002) (citing Educational Placement Services. v. Wilson, 487 So.2d 1316, 1318 (Miss.1986)). Nonetheless, Rule 36 must be enforced according to its terms; "Courts cannot give or withhold at pleasure." Id. Moreover, given the trial court's discretion in dealing with discovery matters, we will not reverse a trial court ruling absent a finding of abuse of discretion. Id. (citing Harkins v. Paschall, 348 So.2d 1019, 1022 (Miss.1977)).
¶ 31. In the case at bar, Elizabeth propounded combined discovery to Stephen on December 10, 2003. On January 30, 2004, Elizabeth's counsel sent a letter to Stephen's counsel requesting answers no later than February 11, 2004. On February 4, 2004, Stephen filed a motion to amend his response to Elizabeth's requests for admissions. Elizabeth filed a motion in opposition to Stephen's motion to amend on February 11, 2004. Because Stephen filed an appropriate motion to amend, pursuant to Rule 36, the court's subsequent decision to allow Stephen to amend his response to the requests for *584 admissions was within its discretion. Therefore, this issue is without merit.
¶ 32. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, AND ROBERTS, JJ., CONCUR. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BARNES, J.
GRIFFIS, J., Dissenting:
¶ 33. I am of the opinion that the chancellor erred as a matter of law. Therefore, with respect for the majority, I dissent.
¶ 34. In Sanford v. Arinder, 800 So.2d 1267, 1271(¶ 15) (Miss.Ct.App.2001), this Court held that "[i]n cases involving a request for modification of custody, the chancellor's duty is to determine if there has been a material change in the circumstances since the award of initial custody which has adversely affected the child and which, in the best interest of the child, requires a change in custody." As such, the non-custodial parent must pass a three-part test: "a substantial change in circumstances of the custodial parent since the original custody decree, the substantial change's adverse impact on the welfare of the child, and the necessity of the custody modification for the best interest of the child." Id. at 1272(¶ 15) (quoting Brawley v. Brawley, 734 So.2d 237, 241(¶ 12) (Miss.Ct.App.1999)) (emphasis added). The focus, therefore, is whether there has been a substantial change within the home of the custodial parent. Here, the chancellor relied on the move or relocation of the non-custodial parent to base his finding that there was a substantial change in circumstances. I am aware of no precedent or authority that supports this holding. Indeed, Professor Deborah H. Bell discusses the "difficult issues in modification actions" presented by the relocation of parents. In each of the cases cited by Professor Bell, it is the relocation of the custodial parent that triggers the modification consideration. Deborah H. Bell, Mississippi Family Law § 5.11[5][b] (1st ed.2005).
¶ 35. In Spain v. Holland, 483 So.2d 318, 318 (1986), the supreme court first considered the question of whether chancellors should "interfere with a divorced custodial parent's planned movement of minor children to a foreign nation incident to that parent's pursuit of a reasonable professional or economic opportunity?" The court struggled with whether the move of a custodial parent would be considered sufficient for a modification of custody. The court held:
We need be clear what we mean by the phrase "adverse effect". These children have already been adversely affected by the inability of their mother and father to live together which led to the 1983 divorce. Beyond this, most children of divorced parents will be further adversely affected if the two parents are living in the same town at the time of the divorce and either subsequently moves thousands of miles away. Where such occurs we solve nothing by shifting custody to the parent staying at home for, in theory at least, a transcontinental separation from either parent will adversely affect the child. The judicial eye in such cases searches for adverse effects beyond those created (a) by the divorce and (b) by the geographical separation from one parent.
Id. at 320-21.
¶ 36. In Lambert v. Lambert, 872 So.2d 679, 685(¶ 24) (Miss.Ct.App.2003), this Court reversed a chancellor's modification *585 of custody due to a custodial parent's relocation and reasoned:
The appellate courts have repeatedly held that the mere moving of one party or the other is insufficient grounds for modification of child custody. Cooley v. Cooley, 574 So.2d 694, 699 (Miss.1991) (frequent moves within a short period of time, including move to Japan, insufficient to warrant change in custody) (overruled on other grounds); Spain v. Holland, 483 So.2d 318, 321 (Miss.1986) (move to England does not require change in custody); Pearson v. Pearson, 458 So.2d 711, 713 (Miss.1984) (move to Hawaii no per se basis for interfering in custody); Brocato v. Walker, 220 So.2d 340, 344 (Miss.1969)[(]600 mile move to San Antonio, Texas, not a material change in circumstances). See also Stevison v. Woods, 560 So.2d 176, 180 (Miss.1990) (move to Alaska, along with split custody and poor relationship with child were "unusual circumstances" warranting change in custody). As stated in Spain v. Holland, 483 So.2d 318 at 321, "we close our eyes to the real world if we ignore that ours is a mobile society. Opportunity and economic necessity transport perfectly responsible adults many miles from their homes."
¶ 37. Here, in April of 2002, the parties agreed and the chancellor entered an order that granted the parties joint legal custody and Elizabeth primary physical custody. At that time, Stephen was in the military and was subject to transfer. A year and a half later, Stephen filed for modification and asked for custody. In his petition, Stephen's grounds for modification are financial issues. Yet, the chancellor's bench ruling bases the change on the fact that Stephen had substantial visitation rights and has now been transferred.
¶ 38. In the cases cited above, Mississippi courts have consistently held that the move or relocation by a custodial parent is an "insufficient" ground for modification of custody. If a custodial parent's move is not a basis to modify custody, then I cannot see how a move by a non-custodial parent would be a legally sufficient ground to change custody. Accordingly, I would reverse and render the chancellor's decision.
BARNES, J., JOINS THIS OPINION.
NOTES
[1] During his direct testimony, Stephen said that when he asked Elizabeth to put Anita's name on the "pickup list," Elizabeth responded that "Anita is not part of Sierra's family and that there was no need to put her on the list."
[2] Stephen testified that because Sierra was emotional and having a tough time dealing with the divorce he discussed Sierra's condition with Elizabeth and asked her, on numerous occasions, to consider putting Sierra into counseling. He further testified that Elizabeth declined his requests, even after sending her the necessary paperwork.